THE CITY OF COLUMBUS *v.* DAHN.

STREET.—*Dedication.*—*Evidence.*—*Intention.*—The question whether a person intended to make a dedication of ground to the public for a street or other purpose, must be determined from his acts and statements explanatory thereof, in connection with all the circumstances surrounding and throwing light upon the subject, and not from what he may subsequently testify as to his real intent in relation to the matter.

APPEAL from the Bartholomew Common Pleas.

WORDEN, C. J.—This was an action by the city against the appellee commenced before the mayor, to recover a penalty for the violation of a city ordinance, by fencing up and thereby obstructing a street in said city. On appeal to the common pleas there was a trial by jury, which resulted in a verdict and judgment for the defendant. The questions sought to be raised in the case are preserved by the record.

The case seems to have been made out clearly enough, if the ground fenced up was a street. This was the disputed

point.   The supposed street was never laid out by any public authority, and it became such, if at all, by dedication.   The facts are about these, as near as we can gather them from the evidence.   The land claimed as a street, and that on each side thereof, has never been laid off and platted, but it was in 1868 properly taken into the city.

In 1850, Irwin and Jones laid out an addition to the then town of Columbus, the eastern boundary of which was California street, and a street ran east and west through said addition, called Walnut street.   The land in dispute here lies east of the said addition.   The following diagram of a part of Irwin and Jones' addition, and of the land in controversy, will serve the purpose of explanation.

The dotted line on the diagram shows the fence in question.  All west of California street belongs to Irwin and Jones' addition.   The street, a portion of which is seen between lots 48, 49, and 47, 50, is Walnut street.   The land east of California street belonged originally to Irwin, or Irwin and Jones.   This ground, as before observed, was never laid out into lots and platted; but in the years from 1853 to 1857 inclusive, Irwin, and Irwin and Jones made conveyances of the property marked in the diagram "Terrell," " Doll," " White," and " Brehm," so describing it as to leave room for the extension of Walnut street through to the east side of the ground.   One of the deeds from Irwin, describing the long strip lying east of the piece marked on the diagram " Dahn," described it as lying between Walnut and Tipton streets, in the town of Columbus, when they may be extended.   It may be remarked that Tipton street, if extended, would occupy the place marked on the diagram as " old State.road."   In 1859 Irwin conveyed the piece marked on the plat " Dahn " to the appellee, describing it as extending " north. to the south side of Walnut street when extended," etc.   The deeds for the ground, north of the supposed extension east of Walnut street, describe the several parcels as commencing at points at given distances east of the south-east corner of lot number 49 (shown in the diagram) of Irwin and Jones' addition, and described parcels lying north of the starting points.   These several starting points, it will be seen, are all on a line with the north side of Walnut street extended.   The evidence shows that the space claimed to be an extension of Walnut street was not originally closed up, but that the ground on each side thereof was fenced up to the  north and south sides thereof respectively, and that for several years, and up to 1862, the whole width of the street, 60 feet, was used by the public as a street.   In 1855, Irwin and Jones  conveyed to Francis Pfeifer  286 feet east and west, of the land lying north of the extension of Walnut street, and he testifies that he would not trade until he had  some assurance about the street.   He bought from

The City of Columbus *v.* Dahn.

Irwin. Irwin told him there was a street clear through to Doup's land (land lying east of that in controversy); he referred to the street running out from Walnut street; this was on the ground when the parties were trading; the trade was then closed. There seems to have been no controversy about the street until 1862, when Brehm and Dahn quarrelled. Brehm got a conveyance from Irwin of the ground constituting the east end of the extension of Walnut street, that is, the part east of Dahn's land, and fenced it up. This prevented Dahn from getting to land owned by him, lying east, the same land, it is supposed, as was before referred to as Doup's land. Dahn then procured a conveyance from Irwin of the residue of the space which had been used as the extension of Walnut street, and fenced it up. This seems to have shut Brehm pretty effectually in. Afterward the fence was set where it appears by the dotted line in the diagram, enclosing forty feet of the supposed street, and leaving twenty only open to the public.

Prior to 1862 there were several houses built upon the lots or parcels of land north of the supposed street, and one on the piece on the south side. There was also a cooper shop and a tannery. The street in question was the only means of getting to or from these houses and buildings. It was used a good deal by the public until it was fenced up in 1862, with the knowledge of Irwin.

There was but little, if any, evidence that varied the above statement of the case. The case made shows, presumptively, if not conclusively, that the ground in question was dedicated to the public as a street.

Irwin, however, was introduced as a witness, and testifies that he does not remember, nor does he think that he told Pfeifer that there was a street clear through to Doup's land, but if he did he meant it.

The defendant offered to prove by Irwin that he, Irwin, did not intend to dedicate said strip as a street, to which the plaintiff objected on the ground that his intention could only be proved by his acts and declarations therewith; but the

objection was overruled, and the plaintiff excepted. Irwin thereupon testified that he never intended to dedicate this strip as a street, but he thought it might be a street, if the town should be extended. The admission of this testimony was made one of the grounds of a motion for a new trial.

Was the admission of Irwin's testimony, that he never intended to dedicate the ground as a street, erroneous?

In *Zimmerman* v. *Marchland*, 23 Ind. 474, a question arose whether a deed, absolute on its face, was intended as a mortgage. The court below had refused to permit the grantee to testify that it was his intention and understanding, during the transaction, that he was buying the land, and not loaning money. The court say upon this point: "There was no error in this. It is very true that the intention of the parties is the very question in dispute. But it has always been the law, that that intention could be shown only by the circumstances which occurred, and from which it might be inferred. This was a rule resulting from necessity, it is true, when the parties were not competent witnesses. But it was, nevertheless, a well settled rule. Ought it to be changed, now that the parties are permitted to swear? We think not. But it is enough that it has not been changed."

In New York it is held to be "well settled, under the rule admitting parties to testify in their own behalf, that, where the character of the transaction depends upon the intent of the party, it is competent, when that party is a witness, to inquire of him what his intention was." *Thurston* v. *Cornell*, 38 N. Y. 281.

The earliest case in New York, bearing upon this question seems to be that of *Seymour* v. *Wilson*, 14 N. Y. 567. There, one Durkee had made an assignment of property, which was claimed to be fraudulent as against his creditors. On trial before a referee he was asked whether in making the assignment he intended to defraud any of his creditors. The question was objected to on the ground that the witness had no right to swear to his intention; but he must state facts only, leaving the referee to pass upon the question of

intention. The referee excluded the testimony. It was held by a divided court that the testimony was competent. WRIGHT, J. was not present, and JJ. COMSTOCK and MITCHELL were of opinion that the ruling of the referee on the point stated was right.

It is possible that the decisions in New York cannot be easily reconciled. The following cases seem to be somewhat at variance with those above cited. In *The People* v. *Saxton*, 22 N. Y. 309, a voter had deposited a ballot for the office of county clerk, with a name printed thereon, and another written thereon, and the question was, which one was entitled to the vote. The court below charged the jury that it was competent for them to find from the evidence whether all or any of the ballots were intended for the defendant, and if such was the intention of the voter or voters, to give effect to such intention by allowing the same to the defendant. The court say: " The intention of the voter is to be inferred, not from evidence given by him of the mental purpose with which he deposited his ballot, or his notions of the legal effect of what it contained or omitted, but by a reasonable construction of his acts. His writing a name upon a ballot in connection with the title of an office, is such a designation of the name for that office as to satisfy the statute, although he omits to strike out a name printed upon it in connection with the same office. The writing is to prevail as the highest evidence of his intention."

Again, in *Shaw* v. *Stine*, 8 Bosw. 157, the suit was to recover damages from the defendants, for inducing the plaintiffs, by false and fraudulent representations, to sell and deliver goods to a third person. The plaintiff, Shaw, was asked this question. " Did you or not sell and deliver the goods on the faith of the representations and statements of the defendant Mendel, respecting the pecuniary condition and responsibility of Cohen and Mendel?" On objection being made, the evidence was rejected. The court say: " Respecting the question proposed to the plaintiff, Shaw, when testifying, and which was objected to, we think the court de-

cided correctly in excluding it. The question required the witness to declare to the jury what the private operations of his mind were at the time of the sale. It is true that the discovery of these, to a certain extent, is necessarily involved in the investigation and decision of the issues presented in the case; but the knowledge of them must be gathered, not from allegations which the witness may now make as to what his mental emotions or purposes then were, but from the attending circumstances of the occasion; from the acts and declarations of the parties at the time." Reference is made to the case of *The People* v. *Saxton, supra*, as sustaining this view.

We do not see as the statute rendering parties competent as witnesses has much, if any thing, to do with the question. It is a question of the competency of evidence, whether coming from a witness who is a party or otherwise. The statute has not made that competent, which before would have been incompetent, as matter of evidence, though coming from a competent witness. Both before and since the statute, cases have frequently depended upon the intent with which certain acts were done by persons not parties, and who were competent witnesses. This case is an illustration of them. To be sure, if the evidence is in itself competent, and the question involves the intent with which an act has been done by a party to an action, the statute makes the evidence admissible because it makes the party competent to testify, who was incompetent before. In other words, the statute has simply made a party competent to testify to whatever would be competent as coming from any other witness, and nothing more.

We have come to the conclusion that the testimony of Irwin, that he never intended to dedicate the strip of ground as a street, was incompetent and should not have been given. In deciding this, we do not decide that in no case can a witness, whether he be a party or otherwise, testify as to the intent with which he did, or omitted, any given act. When other cases arise there will be time for their decision.

The City of Columbus *v*. Dahn.

"It is a general rule that to constitute a valid common law dedication, there must be an intention to dedicate, and an act on the part of the owner, and an acceptance on the part of the public. This general rule is, however, subject to modification, that if the owner of a servient estate intentionally or by gross negligence leads the public to believe that he has dedicated the premises to public use, he will be estopped from denying the dedication to the prejudice of those whom he may have mislead." Herman on Estop. sec. 521; *Wilder* v. *The City of St. Paul*, 12 Minn. 192, and authorities there cited.

We think that the question, whether a person intends to make a dedication of ground to the public for a street or other purpose, must be determined from his acts and statements explanatory thereof, in connection with all the circumstances that surround and throw light upon the subject, and not from what he may subsequently testify as to his real intent in relation to the matter. And this is on the principle that the public have the right to suppose that a man intends what his outward conduct and statements indicate, inasmuch as they cannot discover his intention in any other manner. Men, in all the affairs of life, are presumed to intend what is fairly and clearly indicated by their acts and conduct; and where the rights of the public or third parties are concerned, they have a right to act upon such presumption.

For the error in the admission of the evidence, the judgment below must be reversed.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*N. T. Carr* and *F. Winter*, for appellant.

*S. Stansifer*, for appellee.