## Mansur v. Haughey.

OBSTRUCTING HIGHWAY.—*Abatement of Nuisance.—City.—Alley.—Mistake.— Dedication.—Intent.—Acceptance.—Estoppel in pais.—Contributory Negligence.* —In an action by one adjoining proprietor, against another, to abate a nuisance, the evidence established the following facts, viz.: That prior to 1857 the owner of a certain block in a city had conveyed to the defendant the south part thereof by metes and bounds, together with an easement in an alley ten feet wide on the north side of the same; that in 1857, the north portion of the block being unenclosed and unimproved, and there being no marks to indicate the true line, the defendant, intending to erect his fence on his north line, had, by mistake, erected the same south thereof, throwing out a portion of his ground with the alley; that in 1865 the owner of the north portion of the block, without having his line surveyed, enclosed his property, erecting a fence on its south side, leaving such alley more than ten feet wide, and thereafter conveyed his ground to the plaintiff; that thereafter, in 1874, the defendant had his north line, being the south line of the alley, established by the city civil engineer, who located the same five feet north of the defendant's fence; and that the latter thereupon removed his fence and built the same on the line so established, and thereby reduced the width of the alley to less than ten feet.

*Held,* that the defendant is entitled to recover.

*Held,* also, that the defendant had not dedicated said five feet to the public, the mistake in enclosing tending to repel the idea of dedication.

*Held,* also, that the presumption of dedication arising merely from circumstances may be rebutted.

*Held,* also, that, to constitute a dedication to the use of the public, there must be an intention to do so on the part of the donor, and also an acceptance of the same by or on behalf of the public.

*Held*, also, that the defendant in this case is not estopped to deny a dedication of such ground.

*Held*, also, that the doctrine of estoppel *in pais* involves that of contributory negligence.

From the Marion Superior Court.

*J. T. Dye* and *A. C. Harris*, for appellant.

*G. H. Chapman*, *U. J. Hammond* and *J. J. Hawes*, for appellee.

PERKINS, J.—Suit by the appellee, against the appellant, for the abatement of an alleged nuisance, and for damages.

The nuisance charged to be maintained by the appellant is the obstruction of a public alley in the city of Indianapolis.

Answer in general denial.

Trial by the court; judgment, over a motion for a new trial, in favor of the appellee, and for the abatement of the alleged nuisance.

This judgment in special term was affirmed, on appeal, by the superior court in general term.

The assignment of errors, in this court, is as follows:

"Appellant says, the Marion Superior Court, in general term, erred in affirming the judgment at special term, and he prays said judgment be reversed."

One of the errors assigned in the general term was, that the court erred in overruling the motion for a new trial.

The evidence given upon the trial is all in the record, and the entire merits of the cause are presented by it. No question raised upon interlocutory rulings need be noticed. We proceed to consider the case upon the evidence.

It is proper that we should here observe, that this case is so like that of *Mansur* v. *The State*, *ante*, p. 357, in its facts and principles, that the labor in this is much abridged by the opinion in that. The difference in the cases is, that the evidence is fuller in this than it was

in *Mansur* v. *The State;* and this is a civil, and that was a criminal case.

Mansur, the appellant, owns a lot in the city of Indianapolis, the south-west corner of which is at the intersection of Meridian and Vermont streets. The lot fronts south, and extends back, northward, two hundred and seven and a half feet, to an alley ten feet in width, as originally established. Across this alley, on the north side of it, Haughey, the appellee, owns a lot, fronting west on Meridian street and extending back, eastward, a hundred and ninety-five feet, on which is his residence.

In 1857, this lot, now owned by said Haughey, was unenclosed, and nothing appeared enabling a person to determine, by the eye, the north or south line of the alley. In that year Mansur erected a fence, intended to stand along the rear, the north end of his lot above mentioned, on the south line of said alley. He procured no engineer to mark the line of the alley, and, by mistake, the fence was placed, upon his own lot, five feet south of the line of the alley. We say by mistake, because the fact is clearly proved by the evidence, and no purpose, on his part, is shown to place it elsewhere than upon the line.

In 1865, Canada Holmes, then the owner of the then unenclosed lot above mentioned, now owned by Mr. Haughey, erected the house now occupied by said Haughey, and the fence along the north side of the alley in question. In his testimony, he says: "I put the fence where I supposed the line was. I think the plaintiff's fence (Haughey's) is now where I put mine. Can't say that I had an engineer to fix the corner."

In 1874, Mansur employed the city civil engineer to find and mark the line of said alley, in the rear of his lot; and said engineer, in so doing, found that the fence erected by Mansur in 1857 was five feet south of the south line of the alley; and thereupon Mansur moved his fence to, and placed it upon, that line. It was then found that the space left as the alley was not ten feet wide, as origi-

nally provided in the conveyance of the lots in the block; that it should be, but was only somewhere, as shown by the evidence, between eight and ten feet. The presumption from the evidence is, that this deficiency in width resulted from an encroachment, by Canada Holmes, upon the alley, when he built the fence along, as he supposed, the north side of it, without first procuring an engineer to mark his corner and line.

It is very manifest, that Mansur has not obstructed any portion of the original ten feet, donated by the early proprietor as and for said alley.

The only question, therefore, in the case is, had the five feet of the north end of Mansur's lot, which, by mistake, he omitted to enclose by the fence erected in 1857, become a part of the alley, so that the enclosing of them by the fence erected in 1874 constituted an obstruction of said alley? The five feet of ground had not become a part of the alley, unless the simple fact that Mansur failed, by mistake, to enclose them in 1857, and omitted to correct the mistake for seventeen years, amounted to a dedication to the public of said five-foot strip, for the purpose of widening said alley. Mansur had made no representations or declarations, written or oral, on the subject. He had simply left the land unenclosed by mistake.

This did not constitute a dedication in fact, because, as we have seen, Mansur did not intend to make a dedication. *Mansur* v. *The State, supra,* and cases cited; *McCormick* v. *The Mayor, etc., of Baltimore,* 45 Md. 512.

This case might be embraced by sec. 45, 1 G. & H. 366, which enacts, that "All public highways, which have been or may hereafter be used as such, for twenty years or more, shall be deemed public highways," if it had remained unenclosed for twenty years. But it had not so remained, and the plaintiff must succeed, if at all, by showing a dedication by the owner.

The fact, that the strip of ground was omitted to be en-

closed by mistake, tends to repel the idea that it was left unenclosed, with the intention of dedicating it to the public. *The State* v. *Welpton*, 34 Iowa, 144; *Grube* v. *Wells*, 34 Iowa, 148. And here we quote, as applicable to the case before us, that, "as dedication will be presumed where the facts and circumstances of the case clearly warrant it, so that presumption may be rebutted, and altogether prevented from arising, by circumstances incompatible with the supposition that any dedication was intended." *McCormick* v. *The Mayor, etc., supra.*

There was not a dedication in fact, in this case, but only, as it seems to us, a license to use, *White* v. *Bradley*, 66 Me. 254, and *Harris* v. *The Commonwealth*, 8 Grat. 833; and a revocable one. *Snowden* v. *Wilas*, 19 Ind. 10; *Lane* v. *Miller*, 27 Ind. 534.

Nor, had there been a dedication, was there an acceptance of it. *Mansur* v. *The State, supra; Pierpoint* v. *The Town of Harrisville*, 9 W. Va. 215.

But it is claimed, that Mansur is estopped to deny that there has been a dedication; and the following extract, quoted in the opinion in the case of *The City of Columbus* v. *Dahn*, 36 Ind. 330, is relied upon as establishing the proposition:

"'It is a general rule that to constitute a valid common-law dedication, there must be an intention to dedicate, and an act on the part of the owner, and an acceptance on the part of the public. This general rule is, however, subject to modification, that if the owner of a servient estate intentionally or by gross negligence leads the public to believe that he has dedicated the premises to public use, he will be estopped from denying the dedication to the prejudice of those whom he may have misled.' Herman Estoppel, sec. 521."

The foregoing extract is from the opinion of WILSON, C. J., in *Wilder* v. *The City of St. Paul*, 12 Minn. 192. In the same opinion, the learned Chief Justice explains what is meant, in the opinion, by the words, "intentionally or by

gross negligence leads," etc. He says, it "is but an application of the doctrine of *estoppel in pais.*" And the case in which the opinion was delivered furnishes an apt and appropriate instance of the application of the doctrine. So does the case of *The City of Columbus* v. *Dahn*, 36 Ind. 330. They were both cases in which a party, owning a tract of land adjoining a city, sold it off in lots, representing to the purchasers, severally, that certain streets of the city were to be extended through said tract, and, in the deeds of conveyance of the lots or parcels sold, bounded them upon such streets when extended. In such cases, the price of lots is enhanced by the consideration that streets are to be extended, as represented, and the purchasers pay their money on the faith of such representations; and it would be a gross fraud to sell the grounds, represented to purchasers to be for streets, to other persons for private use, or to fence them up, and so use them by the person who represented them as streets to the purchasers of the lots. We refer, for an exposition of the general doctrine of *estoppel in pais* by fraud and negligence, to the case of *McGirr* v. *Sell, ante,* p. 249.

In the case now before us, Mansur sold no lots to Haughey, and made no representations to him whatever. He did not intentionally mislead him.

We now examine the facts of the case in order to ascertain whether Mr. Haughey purchased his lot under such circumstances as to vest in him the right to compel Mansur to give the five feet, in question, of his lot to the public, for the purpose of widening to that extent, for Mr. Haughey's convenience, the alley fixed by the State, at the width of ten feet. We say for Mr. Haughey's convenience, for it is very evident that Mr. Mansur's convenience does not require it, else he would not have enclosed said ten feet. We take it, that, if Mr. Haughey, or previous owners of the property through whom he claims, have been guilty of gross negligence in the prem-

ises, the former can not maintain this action. The doctrine of *estoppel in pais* involves that of contributory negligence. We have already shown, *prima facie*, that Mr. Holmes, who built the fence on the north side of the alley, was guilty of gross negligence in building that fence perhaps two feet south of the line of the alley, whereby he reduced its width.

In March, 1873, Mr. Haughey purchased said property. Before purchasing, he procured an abstract of title which showed him that the width of said alley, as originally established, was ten feet, and nothing in the abstract showed any change. He admits in his testimony, that, at the time of the purchase, he had, hanging in his room, one of Asher & Adams' maps of Indianapolis, published in 1867, on which the width of the alley was put down at ten feet. Under these circumstances, he admits he procured no survey of the lot before purchasing, and did not enquire of Mansur any thing about the width of the alley, or whether he had really widened it five feet from its original width of ten feet, as shown to Mr. Haughey by his abstract and city map.

It seems to us that these facts exhibit gross negligence on the part of Mr. Haughey, in failing to ascertain from Mr. Mansur the reason of the discrepancy he discovered between the record and map evidence of the width of the alley, and the apparent width as it appeared to the eye. It seems to us, that the interest and duty of Mr. Haughey, to seek information on this point from Mansur, were greater than were those of Mansur, to volunteer information on the point to Mr. Haughey.

Here, we think, we might safely close this opinion. But it may be thought, by those concerned, that we should notice, at least briefly, the point as to the effect of the action of Mansur upon " the public accommodation and private rights" of citizens. The public accommodation is not in question in this suit; but we may say it is not interfered with.

It does not appear by the evidence, that Mr. Haughey has sustained special damage. *Pettis* v. *Johnson*, 56 Ind. 139. But, if he has sustained or will sustain such damage, it is not because he has been intentionally, or by the gross negligence of Mr. Mansur, misled; but because of his own gross negligence in failing to ascertain, prior to his purchase, the true state of facts in the case, for the ascertainment of which he had every facility and ample opportunity.

The judgment is reversed, with costs, and the cause remanded.