Bidinger *et al.*, Trustees, *v.* Bishop *et al.*

No. 8698.

BIDINGER ET AL., TRUSTEES, *v.* BISHOP ET AL.

TRESPASS.—*Highway.*—*Dedication.*—*Obstructions.*—*Answer.*—*Demurrer.*— In an action for trespass in tearing down and removing portions of a fence enclosing land, an answer, that the ground was for twenty (or fifty) years past a public highway, dedicated to and used by the public as such, that plaintiffs entered upon it and built a fence across it, thereby obstructing it, and that the defendants, as citizens and residents of the township, entered upon it and tore down so much of the fences as obstructed the highway, and did no more thereby than was necessary to remove the obstructions, is insufficient on demurrer.

SAME.—*Marshal.*—In such action, a further answer, that the ground was an alley in an incorporated town, that the fence obstructed public travel thereon, and that defendants, as marshal and deputy marshal of the town, by an order of the board of councilmen of said town, removed the fences, contains no defence on demurrer.

SAME.—*Abatement of Nuisance.*—An individual, suffering no inconvenience by the obstruction of a highway, can not right the supposed wrongs of the public *vi et armis;* but the public must proceed by its proper officers to remove the obstruction or punish the party erecting it.

Bidinger *et al.*, Trustees, *v.* Bishop *et al.*

SAME.—*Towns.—Street Commissioner.—Marshal.*—Under the ninth clause of section 22, 1 R. S. 1876, p. 878, the marshal may be, but the street commissioner is, an appropriate officer to execute orders of the board of trustees of a town. Under the general law for the incorporation of towns, there can be no such body as a board of councilmen.

SAME. —*Evidence.—Easement.*—On trial of such action, the evidence showing that plaintiffs, as trustees of a church, were the owners in fee of the real estate over which the easement of the alleged highway was claimed, and that it was a part of the church-yard, between a turnpike in front and the end of a street abutting on a cemetery behind the church, it was error for the court to reject evidence that a board fence across the alleged alley was erected for the purpose of closing up the way and to enable the church to hold her property.

SAME.—*Intention.*—When the character of a transaction depends upon the intent with which it was done, a party may testify as to what his intention was. *The City of Columbus* v. *Dahn*, 36 Ind. 330, distinguished.

SAME.—*Intention to Dedicate.*—The intention to dedicate or not to dedicate, on the part of the owner of land, is a prime element in determining whether there has in fact been a dedication. In such case, evidence of obstructions by fencing up the way, and of the payment of money by occupants of adjoining land, for its use as a private way, is admissible to rebut evidence of its dedication to public uses as a highway.

SAME.—*Statute of Frauds.*—The statute of frauds has no application to an executed contract for the use of such ground as a private way.

PRACTICE.—*Answer.—Demurrer.—Special Finding.—Harmless Error.*—A plaintiff can not complain of the overruling of his demurrer to a paragraph of answer, where the special finding is clearly based on other paragraphs, and expressly states that there was no evidence in support of essential allegations therein.

From the Franklin Circuit Court.

*J. F. McKee,* —— *McKee, H. Berry, F. Berry, W. H. Jones* and —— *McMahan,* for appellants.

*S. E. Urmston* and *S. S. Harrell,* for appellees.

NEWCOMB, C.—The appellants sued the appellees for trespass, in tearing down and removing portions of the fence enclosing the grounds of the Mt. Carmel Presbyterian Church.

The amended answer of the defendants consisted of a general denial, and three special paragraphs. The plaintiffs demurred to the second, third and fourth paragraphs, on the ground that they did not contain facts sufficient to con-

Bidinger *et al.*, Trustees, *v.* Bishop *et al.*

stitue a defence to the action. The demurrers were severally overruled, to which the plaintiffs excepted, and then filed a reply in denial. The cause was submitted to the court for trial, with a request by the plaintiffs for a special finding of the facts and conclusions of law. The finding of facts and conclusions of law were in favor of the defendants. The plaintiffs did not except to the conclusions of law, but moved for a *venire de novo*, on the ground that the special finding of facts was so imperfect, indefinite and uncertain that no proper judgment could be rendered upon it. This motion was overruled. The plaintiffs then moved for a new trial, which was also overruled. Proper exceptions were taken to these rulings. Judgment was then rendered for the defendants.

The first question presented is the overruling of the demurrers to the special answers. The second paragraph was as follows, omitting the formal commencement and conclusion: "Defendants say that there is, and for more than twenty years last past has been, a road and public highway situate on and along the west side of the premises and real estate described in plaintiffs' complaint, dedicated to and used by the public as such during all of said time, with the knowledge and consent and without objection on the part of the plaintiffs, or any one interested in said real estate; that heretofore, to wit, about the 1st day of October, 1879, plaintiffs unlawfully entered upon and built a fence across said road and highway, thereby obstructing the same; that said defendants, being citizens and residents of Springfield township, in Franklin county, Indiana, and entitled to use and travel said road and highway, admit that they entered upon and tore down so much of said fences as obstructed said highway, which is the same alleged trespass complained of in plaintiffs' complaint; and said defendants say that they did no more thereby than was necessary to remove said obstructions."

Bidinger *et al.*, Trustees, *v.* Bishop *et al.*

The third paragraph was substantially the same as the second, except that it averred that the alleged highway had existed for fifty years, and except that this paragraph did not state that the defendants did no more damage than was necessary, etc.

The fourth paragraph alleged that the premises on which the defendants entered, etc., was an alley, fifteen feet in width, in the incorporated town of Mt. Carmel; that the fences obstructed said alley and the public travel thereon; that the defendant Ashton was the legally acting marshal of said town, and the defendant Bishop was the deputy marshal; and that they, as such officers, entered upon said land and removed said fence and obstruction according to law, and under and by virtue of an order of the board of councilmen of said town. This answer denies any entry upon or injury to the property of the plaintiffs, other than the removal of said fence.

The plaintiffs question the sufficiency of the second and third paragraphs of the answer, on the ground that they do not allege that the defendants had ever travelled over said alleged way, or that they ever intended to, or that the fences destroyed were any inconvenience to them. They urge that the defendants, in such case, were not justified in committing the trespass complained of, and that, where there is no inconvenience to an individual by the obstruction of a highway, he can not right the supposed wrongs to the public *vi et armis*, but that the public must proceed by its proper officers to remove the obstruction or punish the party erecting it.

In this position we think the appellants are right. In Cooley on Torts, pp. 46, 47, the rule is thus stated: "One instance in which redress by the act of the party is admitted, is where a nuisance exists to his prejudice; either a private nuisance or a public nuisance from which he suffers a special and peculiar injury. The redress here consists

in removing that which constitutes the nuisance, and it is allowed, not because of any injury it may have done, but to prevent the injury it may do. It is therefore, in some sense, a preventive remedy, not a compensatory remedy: for damages suffered the party is left to the ordinary action. The question who may abate a nuisance may depend on whether the nuisance is public or private. If it is a private nuisance, he only can abate it who is injured by its continuance: if it is a public nuisance, he only may abate it who suffers a special grievance not felt by the public in general. Therefore, if one places an obstruction in a public street, an individual who is incommoded by it may remove it; but unless he has occasion to make use of the highway he must leave the public injury to be redressed by the public authorities. It is the existence of an emergency which justifies the interference of the individual."

There are cases which hold that any person may abate a public nuisance, but the weight of authority decidedly supports the rule as laid down by Judge COOLEY. We need not cite the authorities in support of the text, as the above rule was quoted by this court, and approved as a correct exposition of the law, in *The State* v. *Flannagan*, 67 Ind. 140.

It follows that the court erred in overruling the demurrers to the second and third paragraphs of the answer.

The board of trustees of incorporated towns are empowered by the ninth clause of section 22 of the act for the incorporation of towns, etc., 1 R. S. 1876, p. 878, "To lay out, open, grade and otherwise improve the streets, alleys, sewers, sidewalks and crossings, and keep them in repair, and to vacate the same." This authority probably may be exercised through the agency of the marshal, but the appropriate officer for such duty would seem to be the street commissioner, who is required by the same section of the statute to be appointed by the board of trustees.

By the general law for the incorporation of towns, the governing power of the town is confided to a board of trustees, and there can be no such body as a board of councilmen. Unless, therefore, the town of Mt. Carmel is acting under an ancient special act of incorporation providing for a board of councilmen, the fourth paragraph of the answer is bad, because it shows that the order under which the defendants claimed to act was issued by a body having no legal existence.

But the plaintiffs were not injured by the ruling on the demurrer to this paragraph, supposing it to have been erroneous, as the special finding is clearly based on the second and third paragraphs of the answer, and expressly states that there was no evidence that the town of Mt. Carmel was incorporated. We may add that there was no evidence that the *locus in quo* was in the town of Mt. Carmel, nor was it so found by the court.

As the judgment must be reversed for error in overruling the demurrers to the second and third paragraphs of the answer, we need not decide whether the motion for a *venire de novo* was or was not correctly overruled; but the motion for a new trial involves some questions that are likely to arise upon another hearing, and it is due to the parties and to the court below that we give our opinion upon them. A proper understanding of these questions requires a statement, in general terms, of the evidence given on the trial.

The uncontroverted evidence shows that the plaintiffs were the owners in fee, in trust for the Mt. Carmel Presbyterian Church, of the real estate over which the easement of a highway was claimed, and that they and their predecessors in office had been such owners since October 2d, 1827, and that the defendants were citizens and residents of Springfield township, and that they removed the fences, as charged in the complaint.

Bidinger *et al.*, Trustees, *v.* Bishop *et al.*

The evidence further shows that the entire church premises consisted of a tract of land 26 by 24 rods in extent, omitting fractions of rods ; that, soon after acquiring title to the property, the congregation of said church erected a building for public worship on said premises, which was used until the year 1870, when it was torn down and a new church edifice was built in its stead, which was finished in 1871.

The south front of the church lot is on a turnpike ; on the west side is a lot formerly occupied by one Hasson, and afterwards by Fogel and Thompson, and at the time of the trial by Fogel and Laird, who had divers out-buildings on the east side of their lot, and a dwelling house on the southeast corner. Occupying a part of the north side of the church grounds was a cemetery. The east end of First street abutted on this cemetery, a little more than half the width of the street. The alleged highway is claimed to have extended north from the turnpike, along side of the lot of Fogel and Laird, to the east end of First street, and to connect then with that part of First street south of the cemetery. It was not proven or claimed that a highway had been laid out by public authority, but that by long use the public had acquired a right of passage to the width of fifteen feet immediately east of the lot of Fogel and Laird. It appeared from the evidence that after the first church building was erected a fence was placed in front of it, running from the cemetery south to the road now known as the turnpike, and that between said fence and the west line of the church grounds there was left an open space varying, according to the recollection of witnesses, from twelve to eighteen feet in width. There was evidence tending to prove that the public had, to some extent, used this space as a passage-way from the turnpike to First street, and also evidence tending to prove that the church authorities had no intention to dedicate the space for a public highway, but that it was left open to furnish ready access to the church

by persons attending it, and as a hitching place for the horses of persons who came to church in vehicles or on horseback.

There was also evidence tending to prove that in 1848, and again in 1853, this passage way was fenced up for short periods, but that the obstructions were removed for the accommodation of the occupiers of the Fogel and Laird property, and in consideration of a small sum paid to the trustees of the church.

There was some evidence that this disputed space was not obstructed from 1853 to 1879, but the decided preponderance of the testimony was that when the new church building was commenced in 1870, the north end of the space was obstructed by a fence, and that another fence was built across it some distance above the south end, and that these obstructions continued for about one year. After the new church building was finished, in 1871, the open space in front was enlarged to sixty-six feet, and a line of hitching posts was planted for a considerable distance north and south in that part of it claimed to be the fifteen feet highway, some of which remained at the time of the trial. Hitching posts were also placed in other portions of the sixty-six feet open space. The premises remained in this condition until August, 1879, when the plaintiffs fenced across this space at both ends, placing a gate in the south fence. These fences remained until October, 1879, when the west fifteen feet of each was removed by the defendants.

About one year before said fences were built the plaintiffs leased to James Rowe a part of the church grounds immediately south of the cemetery and abutting on First street, for the purpose of a blacksmith shop. Some evidence was introduced by the appellees, that access by the public to the blacksmith shop was made inconvenient by reason of the fences in question.

The causes assigned for a new trial, so far as it is impor-
tant to notice them, were the following : James Rowe was a
witness for the defendants, and had testified to the incon-
venience occasioned to customers of his shop in consequence
of the fences placed across the alleged highway.   On his
cross-examination the plaintiffs asked him this question :
"Did not the trustees of the Mt. Carmel Presbyterian
Church, before and at the time they leased the ground to
you on which your blacksmith shop is situated, inform you
of their intention to place a fence on the south side of your
shop and across the alleged alley or highway, so as to close
the same?"   To this question the court sustained an objec-
tion, but the witness was subsequently called by the plain-
tiffs and answered the question without objection.   The
plaintiffs, therefore, were not prejudiced by this ruling.

Casper Fogel, a witness on behalf of the plaintiffs, testi-
fied as follows :  "I saw that alleged way closed at the south
end.   I mean to say it was about half way up the alleged
alley.   That time I saw it closed there was in March, 1853,
by a board fence across.   I do not know how long this fence
remained there.   I knew it a little over a week.   [It was
erected for the purpose of closing that way and to enable
the church to hold her property.]"

On motion of the defendants the portion of said evidence
enclosed in brackets was stricken out by the court.

The plaintiffs propounded to said witness the following
question :  "If the fence you speak of across the alleged
way was ever removed, you may state, if you know, why
and for what purpose it was removed?"   And the plaintiffs,
at the time stated to the court that they expected to prove
by said witness, by the answer to said question, that such
fence was removed under an agreement made on behalf of
one Charles Hasson with the trustees of said church, for
the sole use and convenience of said Hasson in the use of
his property adjoining the alleged way on the west side

thereof. The question was objected to by the defendants, and the objection was sustained by the court.

And said witness was asked this further question by the plaintiff: "State whether or not, if you know, any money was at any time paid to the trustees of the Presbyterian Church of Mount Carmel, in consideration for the use as a private way of the alleged highway in controversy in this suit?" The question being objected to by the defendants, the plaintiffs stated to the court that they expected to prove by said witness, in answer to said question, that John Applegate and Richard Gates paid to the trustees of said church, about the month of March, 1853, the sum of one dollar, in consideration that said trustees would permit one Charles Hasson, whose property abutted on the west side of said alleged way, to use as a private way the alleged highway in controversy, so long as said Hasson might desire to use it, and that said Hasson did have the use of the alleged highway, as a private way, under said agreement, and used it as such from the year 1853 up to the year 1860. The objection was sustained by the court.

The plaintiff also propounded to said witness the following question: "State whether or not, during the time Fogel and Thompson owned and occupied the premises immediately west of the alleged way, said firm paid to the plaintiffs any money for the use of the alleged way in controversy in this suit, as a private way, for the benefit of said firm?" The question being objected to by the defendants, the plaintiffs stated to the court that they offered to prove, in answer thereto, that the firm of Fogel & Thompson, of which the witness was a member, had paid five dollars to the trustees of said church, as a consideration for the use of the fourteen feet of ground in controversy, from April, 1860, to sometime in 1869, as a private way. The objection was sustained.

John A. Applegate, a competent witness, while being examined on behalf of the plaintiffs, was asked by them the

following question : "State, if you know, for what purpose the alleged way was fenced up in 1853?" The question was objected to, and the plaintiffs announced to the court that they expected to and could prove by the witness, that the trustees of said church had openly declared, while the alleged way was so fenced up, in 1853, that it was fenced up for the purpose of cutting off any right of way by user along the way in dispute. The objection to this question was also sustained.

To each of said rulings the plaintiffs excepted.

This court has so frequently passed upon questions touching the dedication of highways, that the following general rules may be regarded as established in this State.

1. A road that has been used by the public uninterruptedly for twenty years, with the knowledge and consent of the owner of the soil, becomes a public highway. *Hays* v. *The State*, 8 Ind. 425 ; *Hart* v. *The Trustees, etc.*, 15 Ind. 226.

2. The use of land for a highway for such length of time that public accommodation and private rights might be materially affected by an interruption of the enjoyment, is sufcient to raise a presumption that the owner intended a dedication to the public. *The State* v. *Hill*, 10 Ind. 219 ; *Holcraft* v. *King*, 25 Ind. 352 ; *Summers* v. *The State*, 51 Ind. 201.

3. The fact that a road has been used by the public for a considerable length of time, with the knowledge of the owner of the land, does not create a presumption of dedication, unless such use be also with the consent of such owner. *Sullivan* v. *The State*, 52 Ind. 309.

4. A dedication of property to public uses may be implied from the acts of the owner. *Williams* v. *Wiley*, 16 Ind. 362.

5. The presumption of a dedication arising merely from circumstances may be rebutted. *Mansur* v. *Haughey*, 60 Ind. 364 ; *Mauck* v. *The State*, 66 Ind. 177.

6. To constitute a dedication, there should be a clear intention to devote the ground claimed to have been dedicated,

Bidinger *et al.*, Trustees, *v.* Bishop *et al.*

to the use of the public. *The President, etc.,* v. *The City of Indianapolis*, 12 Ind. 620 ; *Mansur* v. *The State*, 60 Ind. 357 ; *Mansur* v. *Haughey, supra*.

The intention to dedicate or not to dedicate, on the part of the owner of the land, is a prime element in determining whether there has, in fact, been a dedication. We think, therefore, that the court below erred in striking out the evidence of the witness Fogel, showing the intention and purpose for which the alleged way was fenced up in the year 1853. The tendency of this evidence was to show that the trustees of the church did not intend to dedicate a way to the public, but to advise the public, by the erection of the fence, that its right to appropriate the ground for a highway was denied.

In 2 Greenleaf on Evidence, sec. 664, it is said : "The evidence of dedication of a way may be rebutted by proof of any acts on the part of the owner of the soil showing that he only intended to give license to pass over his land, and not to dedicate a right of way to the public. Among acts of this kind may be reckoned putting up a bar, though it be for only one day in a year, or excluding persons from passing through it by positive prohibition."

It is urged, however, that evidence of acts only was admissible, and that intention being an operation of the mind merely, the witness could not properly state with what intent the act was done. The contrary doctrine was established in *Greer* v. *The State*, 53 Ind. 420, where it was held, that, where the character of a transaction depends upon the intent with which it was done, the party may testify as to what his intention was. If the defendants had offered evidence, that, when the obstruction of 1853 was erected, the trustees of the church had declared their intention to only temporarily obstruct the way, and not to deny the right of user by the public, we think it will not be questioned that such evidence would have been admissible ; and, if admissible for the pur-

pose of showing an acquiescence in a public claim of a right. of way, there is no good reason why evidence was not admissible of a contrary intention. The intention accompanied the act. In this respect the present is unlike the case of *The City of Columbus* v. *Dahn*, 36 Ind. 330, where the secret intention of the witness contradicted his acts manifesting a dedication. The question propounded to the witness Applegate, as to the intention declared by the trustees when they fenced up the alleged way in 1853, was proper, and the court erred in sustaining the objection to it.

The authorities name two grounds on which the owner of the soil is estopped from disputing a dedication by such acts as have amounted to a surrender of the easement of a highway to the public, namely, inconvenience to the public by an obstruction of the right, and material injury to private interests that have accrued by reason of the dedication. Considerable evidence was given relative to the injury and inconvenience suffered by the occupants of the Fogel and Laird lot by the obstruction of the alleged way. To meet this. evidence, it was competent for the plaintiffs to prove that. Hasson, Fogel and Thompson, and Fogel and Laird, who had in turn owned and occupied said property for many years, had recognized the passage claimed by the defendants to be a public highway as a mere private way, held at. the pleasure of the trustees of the church or by contract with them, and that said parties had paid the trustees a. money consideration for the use of the same as a private way.

The court should have permitted the questions put to the. witness Fogel, on this point, to be answered.

The appellees urge that, inasmuch as the witness Applegate testified to the payment of money, in 1853, as a consideration for the use by Hasson of the ground in dispute, as a private way, the appellants were not injured by the exclusion of the evidence of Fogel to the same effect. There. is no rule of evidence that confines a party to a single wit-

ness to establish a given fact; but, as the fact was found by the court in accordance with the testimony of Applegate, the appellants were not injured by the exclusion of the evidence of Fogel to the same point.

It is stated in the special finding, that, for the sum of one dollar, the trustees of the church in question rented the way in controversy as long as the lessee wanted to use it, and that he did use it for eight years; but that said contract was void by the statute of frauds. This evidently refers to the renting to Hasson, testified to by the witness Applegate. The court was mistaken in the supposition that the statute of frauds had anything to do with this contract. The action was not for the purpose of enforcing it. The contract had been fully executed, and the purpose of the evidence was to show that while the alleged way was used by Hasson he did not claim it as a right adverse to the plaintiffs, but as a private right of way held in subordination to the title of the plaintiffs.

The appellees suggest that the cause had been fairly tried, that the finding is fully sustained by the evidence, and that the judgment ought not to be reversed, although the court may have erred in excluding testimony. We are not satisfied that the case has been correctly decided; nor can we say that the exclusion of proper evidence offered by the plaintiffs did not prejudice them. The evidence did not show any right or authority in the defendants to commit the trespass complained of, beyond that alleged in the second and third paragraphs of the answer. Indeed, the special finding in their favor is expressly placed upon the ground that they, *as citizens*, had a right to remove the fences, because they were an obstruction to a highway that had been dedicated to the public—a conclusion shown to be erroneous in our discussion of the demurrers to the answers.

For the errors stated the judgment of the circuit court ought to be reversed.

VOL. 76.—17

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment below be, and it is, in all things hereby reversed, at the costs of the appellees, and that said cause be remanded to the Franklin Circuit Court, with instructions to grant the appellants a new trial, to sustain the demurrers of the plaintiffs to the second and third paragraphs of the answer of the defendants, and for further proceedings in accordance with said opinion.