## HAMILTON *v.* THE STATE.

[No. 2,473. Filed Dec. 21, 1898. Rehearing denied June 8, 1899.]

HIGHWAYS.—*Gravel Roads.—Hauling Heavy Loads.*—An oil tank resting upon springs and bolsters fastened to the running gears of a wagon is not a part of the wagon within the meaning of section 2047 Burns 1894, making it unlawful to haul upon gravel roads loads exceeding 2,500 pounds in weight, at certain seasons of the year, but is a part of the load.    *pp. 479-485.*

EVIDENCE.—*Criminal Law —Intent.*—In a prosecution under section 2047 Burns 1894 for hauling a heavy load over a gravel road the intent of the defendant was not of the essence of the offense, and no error was committed in refusing to permit defendant in the trial of such action to testify as to his intentions. *pp. 485, 486.*

APPEAL AND ERROR.—*Record.—Instructions.*—Available error cannot be predicated upon the action of the court in refusing to give instructions tendered, where such instructions were not signed by the complaining party nor his counsel. *p. 487.*

From the Randolph Circuit Court. *Affirmed.*

*J. S. Engle* and *W. G. Parry*, for appellant.

*W. L. Taylor*, Attorney-General, *Merrill Moores* and *A. E. Dickey*, for State.

WILEY, J.—In 1889 the legislature enacted the following law: "It shall be unlawful for any person to haul over any turnpikes or gravel roads at any time when the same is [are] thawing through, or is [are], by reason of wet weather, in condition to be cut up and injured by heavy hauling, a load on a narrow tired wagon of more than twenty hundred pounds, or on a broad tired wagon or [of] more than twenty-five hundred pounds, and any person violating the provisions of this act shall be fined not less than five dollars, nor more than fifty dollars, for each load so hauled." Section 2047 Burns 1894. Appellant was indicted for a violation of this statute, which indictment was in two counts. In the first

count it is charged, "That one Franklin Hamilton, late of said county, on the 27th day of February, 1896, at said county and State aforesaid, did then and there unlawfully haul in a wagon, then and there having broad tires, to wit, three inches, a load of more than twenty-five hundred pounds weight, over and upon a certain gravel road then and there situate, and running from the city of Winchester to the city of Union City, known as the Winchester and Union City gravel road, at a time when said road was then and there thawing through, and by reason of wet weather was then and there in a condition to be cut up and injured by heavy hauling, contrary," etc. The second count is substantially the same, except that the date is left blank, and it is charged that appellant hauled a load of more than twenty hundred pounds in a narrow tired wagon, to wit, the tire being two and one-half inches. Appellant moved to quash each count of the indictment, which motion was overruled. Appellant entered a plea of not guilty, and, on trial by jury, he was found guilty. Appellant's motion for a new trial was overruled, and judgment pronounced on the verdict. He has assigned as error: (1) That the court erred in overruling his motion to quash each count of the indictment; (2) that the court erred in overruling the motion to quash the first count of the indictment; (3) the court erred in overruling the motion to quash the second count of the indictment; (4) the court erred in overruling the motion for a new trial.

As the first, second, and third specifications in the assignment of errors present the same question, we will consider them together. It appears from the record that the wagon in question was a wagon constructed for hauling oil, and for a description of it, which seems to be fair, accurate, and full, we quote from appellant's brief: "The wagon in question is one of peculiar design, built and constructed expressly for the purpose of transporting petroleum and oil, and is composed of four wheels, two front and two rear, held and retained together by iron axles, upon each of which axles rests

heavy platform springs; upon these platform springs, and at the outer edge thereof, next to the wheels, and running the full length of the wagon on each side thereof, are two heavy timbers or side-bars, and in this manner the front and rear gear are partially attached together. Upon the platform springs and bolsters, and between these two timbers, or side-bars, rests an iron tank or boiler, which is securely strapped, bolted, and fastened to the running gears and side-bars by means of large iron straps encircling the tank, and the ends projecting through the timbers, and on these ends is attached a nut which is drawn on by threads on the end of these straps, which fastens this tank and boiler very securely and tightly to the gear of the wagon. Thus it is that this bed is placed upon this wagon. At the front end of the boiler or tank is placed the driver's seat, and the same is so designed as to allow the seat to rest upon the tank, the tank at this point being only half as high, and flat on the top; over this seat is placed a top for the protection of the driver, similar in design to an ordinary top buggy."

Counsel for appellant insist that the motion to quash should have been sustained for the reason that it does not show that the indictment was indorsed "A true bill," or that it was signed by the foreman of the grand jury. If the indictment failed to show this, the motion to quash would have been well taken. *Strange* v. *State*, 110 Ind. 354, and authorities there cited; *State* v. *Bentin*, 123 Ind. 124. But, unfortunately for appellant's insistence, the record, as it comes to us, does show that the indictment is properly indorsed, as required by statute, as follows: "No. 8648. State of Indiana v. Frank Hamilton. Charge heavy hauling. A true bill. G. O. Thompson, foreman." The indictment also bears the signature of the prosecuting attorney, and on the back thereof is indorsed the names of the State's witnesses.

Another objection urged to the indictment is that the language used is not sufficient to charge a crime within the lan-

guage and meaning of the statute, because the words "cut up," as used in the statute, are omitted. In this also appellant is in error, for the indictment does not omit said words, for it is charged that the road was "in a condition to be cut up and injured by heavy hauling." The indictment in its charging the crime is in the identical language of the statute, and it is not subject to the objections urged. It is fair to appellant's counsel to say that, since their brief was filed, a writ of *certiorari* was petitioned for by the State, and granted, whereby the record was amended to show that the indictment contained the words "cut up," which appear to have been omitted from the transcript as originally filed, and also the record has been corrected so as to show the indorsements on the indictment. Each count of the indictment was good, and the court did not err in overruling the motion to quash.

In his motion for a new trial, appellant assigned twenty specific reasons therefor, but they may all be properly grouped and classified under four subdivisions or heads: (1) As to the admission and rejection of evidence; (2) alleged error in refusing and giving certain instructions; (3) the verdict is contrary to law; (4) the verdict is contrary to the evidence.

It is the theory of appellant that the tank which has been above described was a part of the wagon, and not a part of the load, and, if it was a part of the wagon, and the oil in it weighed less than the amount fixed by statute, then there is no violation of the statute, and could not be a conviction. As the question is of controlling importance in the case, we will now consider it for the purpose of determining whether or not the tank was a part of the wagon, under the facts, and within the meaning of the statute. This question settled will make easier the solution of other questions presented and discussed. Counsel for appellant say that in the court below counsel for the State conceded that if the tank was a part of the wagon, and not a part of the load, there would be no violation of the statute, and could not be a conviction.

In considering this question, it is proper for us to look to and ascertain, if we can, the intention and object of the legislature in passing the law upon which the prosecution rests. Courts take judicial knowledge of the laws of the State, and hence we know that by virtue of such laws certain authorities are empowered to construct free gravel roads. We know, by the common history of the State, and by common experience and observation, that many hundreds of miles of such roads have been constructed. The construction of such roads have proved a great burden to those whose lands have been assessed for their construction, and an additional burden is imposed on the public to maintain them. It follows that such roads should be protected and preserved, in the interest and for the convenience of the public, by the best means possible. At certain seasons of the year, when the frost is leaving the earth, the roads are "thawing" through, or in extreme wet weather they are "in a condition to be cut up and injured by heavy hauling," and it was to protect them from such injury that the statute was passed. To state it differently, it was the intention of the legislature, in passing the law, to protect the roads from injurious burdens by hauling over them exceeding in weight, by the load, the amount fixed by law. It certainly was not intended that one class of vehicles should be at liberty to pass over the roads, although the burdens to them would be greater than that defined by the statute, while others carrying like burdens would be prohibited. So the only reasonable conclusion, based upon an intelligent and rational construction of the statute, is to hold that the legislature intended to protect the highway, to which the statute applies, from the injury resulting from its violations. Our Supreme Court has laid down a wholesome and correct rule for the construction of statutes, as follows: "Underlying all the rules for the construction of statutes is the cardinal and general one, that in construing a statute the court will seek to discover and carry out the intention of the legislature in its enactment. In the search for that intention

the court will look to each and every part of the statute; to the circumstances under which it was enacted; to the old law upon the subject, if any; to other statutes upon the same subject, or relative subjects, whether in force or repealed; to contemporaneous legislative history, and to the evils and mischiefs to be remedied." *Barber, etc., Co.* v. *Edgerton,* 125 Ind. 455, 460, and many cases cited. The following definition is given of the word "wagon" by Anderson in his dictionary of law, p. 1097: "In a statute exempting property from execution, a common vehicle for the transportation of goods, wares, and merchandise. * * * The term is general. Vehicles known as wagons differ in style, form, and dimensions, depending upon the character of the use, the nature of the business, and the pleasure or notions of the manufacturer or owner. A 'hearse' is a wagon." Webster defines the word "wagon" as follows: "A wheeled carriage; a vehicle on four wheels, and usually drawn by horses; especially, one used for carrying freight or merchandise."

In the case before us it is shown that the vehicle used by appellant was on four wheels, and, within the definition, was a "wagon." There were cross-bars on either side of the wagon, reaching from the front to the rear axles, and between these bars the tank rested. Appellant insists that this tank constituted the coupling to the wagon, and hence became a part of it. In fact it is shown that there was no coupling pole in the wagon. If, as appellant contends, the tank was the coupling to the wagon, because there was no coupling pole in fact, and that by reason thereof the tank became a part of the wagon, then, by a like course of reasoning, it could be said that if a person were engaged in hauling saw-logs of extreme length, so that he could not use the ordinary coupling pole, he could lash the hounds of the wagon to the saw-log, thus making it the coupling, and when so lashed the log would become a part of the wagon. This would be a sophistry which the law would not tolerate, or sound reason approve. Taking the statute as we have above

construed it, the intention of the legislature, as we have en-deavored to ascertain it, and the facts applicable to the ques-tion under consideration, we must hold that the tank was not a part of the wagon, but a part of the load. To hold other-wise would, in many instances, defeat the very purpose for which the law was enacted, and be a license in similar cases for its violation. So to hold would be to grant privileges to one class of persons which are denied to others, and would subvert the purposes of the law making power of the com-monwealth in passing the statute, to protect from injury, and almost ruin, the public thoroughfares it sought to protect.

It appears from the record in this case that the appellant was an employe of the Standard Oil Company, and, for the offense for which he was prosecuted, we find that on the occa-sion of his driving over the road in question the wheels of his wagon cut through the gravel, mired into the clay, and though he was driving three horses they could not pull the wagon out. Can it be insisted, in this instance, that a greater privilege shall be accorded this oil company than the farmer whose lands have been assessed to construct the road, and taxed to maintain it? Such a doctrine would be monstrous, and not only a reproach to the law, but a shock to the con-science. This conclusion disposes of several questions pre-sented in the motion for a new trial, where evidence was in-troduced, over appellant's objections and exceptions, as to the weight of the tank. As the tank was a part of the load, it was competent to prove its weight.

Appellant next complains because the court refused to al-low him to answer the following question: "You may tell the jury, Mr. Hamilton, at the time upon this occasion whether you then believed you had a lawful load, a load that you had a right to haul over that road under the law?" It is insisted that it was error not to permit appellant to answer this ques-tion, for the reason that a person charged with crime, may, in giving his evidence, testify as to what his intention was. As to whether the question elicited an answer as to his intent,

we do not decide, but concede that it did.   It does not neces-
sarily follow that it was error to refuse to permit him to
answer it.   It seems to be firmly established in this State that
a defendant in a criminal case may testify as to his intention,
only when such intention is a material part of his defense.
The rule is clearly stated in *Ross* v. *State*, 116 Ind. 495, as
follows: "Now that defendants are permitted to testify in
their own behalf there can be no valid reason assigned why
they should not be allowed to testify to the intent with which
any act was done, where such intent is a fact necessary to be
ascertained."   The same rule is also stated in *White* v. *State*,
53 Ind. 595; and it obtains in civil cases.   See *Over* v. *Schiff-
ling*, 102 Ind. 191; *Heap* v. *Parrish*, 104 Ind. 36; *Bidinger*
v. *Bishop*, 76 Ind. 244; *Stratton* v. *Lockhart*, 1 Ind. App.
380.   In this case the intent was not the essence of the
offense, and it does not seem to us that it can be so contended
with any show of reason.   The offense with which appellant
is charged, as all offenses, crimes, misdemeanors and felonies
in this State, are statutory, and hence come within the rule
laid down in volume 8 Am. & Eng. Ency. of Law (2nd ed.)
p. 291, wherein it is said: "The legislature may enact laws
for the mere violation of which, irrespective of the criminal
intent, penalties are attached; as for selling liquors to
minors; selling adulterated foods and drugs; allowing minors
to frequent saloons; changing and obstructing public roads;
maintaining a nuisance; disposing of mortgaged property."
*Toops* v. *State*, 92 Ind. 13, is in point.   Appellant was in-
dicted for obstructing a public highway.   The court said:
"In prosecutions for statutory offenses, such as   obstructing
highways, selling liquor without license, obstructing public
drains, and the like, it is not incumbent on the State to prove
malice.   A malicious motive or design is not an element of
the case."  See, also, *State* v. *Baltimore, etc., R. Co.*, 120
Ind. 298; *Nichols* v. *State*, 89 Ind. 298.

The State insists that the question asked appellant was not
one calling for an answer as to his intent, but whether he

knew he was violating the law, and we are rather inclined to this view. In any event, his intent being entirely immaterial in this case, the court did not err in excluding the evidence. The appellant is presumed to know the law, and as it is shown that the oil he was hauling weighed 1,917½ pounds, and he knew it, and that the tank, which was a part of the load, weighed from 1,500 to 1,800 pounds, and he knew it, he knew he was hauling a heavier load than that prescribed by statute, and it is clear his intention was wholly immaterial.

Appellant insists that the court erred in refusing to give to the jury instruction number two, tendered by him. That instruction is as follows: "If the jury believed from the evidence that the load which the defendant is charged with hauling was a load of coal oil which was in a large tank on a wagon, and that such tank was bolted and fastened on the axles and bolsters in such way as to form a part of the wagon, as a bed forms a part of the ordinary farm wagon, and that such wagon was not complete without such tank, then the weight of such tank could not be considered in estimating the weight of the load." We need not discuss this instruction further than to say that, in view of the fact that we have held that the tank was not a part of the wagon, but a part of the load, it did not properly state the law. But we might further say that this instruction is not properly before the court, for it does not appear that any of the instructions tendered by the appellant were signed by him or his counsel. Unless it appears from the record that this was done, there was no available error in refusing to give them. *Houk* v. *Bronson*, 17 Ind. App. 119; *Hindman* v. *Timmie*, 8 Ind. App. 416; *State Nat. Bank* v. *Bennett*, 8 Ind. App. 679; *Darnell* v. *Sallee*, 7 Ind. App. 581. Appellant also complains of instruction number five, given on the court's own motion, which is as follows: "If you believe from the evidence that the wagon of defendant mentioned in the indictment was constructed with four wheels, two front and two rear, or hind wheels, the wheels being joined by axles on

Hamilton v. State.

which rest bolsters, bars, or springs, and if the bolsters, bars, or springs are connected from front to rear by side-bars or reaches or platform by which, when a team is attached to the tongue of such wagon the same could be hauled and moved about, and if you believe that after such construction of said wagon a boiler or tank of iron was placed upon said wagon to be used for transporting oil, and so fastened to said wagon, its said side-bars, bars or platforms and bolsters, as to hold and keep the same in place when filled with oil, then the said boiler or tank was a part of the load on said wagon equally with the oil contained therein." This instruction is a correct exposition of the law, as applied to the facts in this case. It is so well stated, so clear and to the point, that further discussion is unnecessary. There are other instructions given by the court to which objections are urged, but, after a careful examination of them, and construing them together, as we must, we are of the opinion that they fairly state the law, and that appellant was not injured by them.

It is next insisted that the judgment should be reversed because, (1) the verdict is contrary to law, and (2) the verdict is contrary to the evidence. Appellant's contention is that the verdict is contrary to law, because the tank was a part of the wagon and not a part of the load; and, aside from this, the evidence does not show that the load exceeded in weight the amount fixed by statute. We have disposed of this question by what we have already said, and it follows for that reason that the verdict is not contrary to law. As to the verdict being contrary to the evidence, we can only say that there is abundant evidence upon which it rests. It clearly appears that the load appellant was hauling was largely in excess of the weight fixed by the statute, and that he was hauling such load at a time which the statute prohibits. Looking at the entire record, we are clearly of the opinion that a correct result was reached in the trial court, and that there are no available errors in the record, for which there should be a reversal. Judgment affirmed.