THE PRESIDENT AND DIRECTORS OF THE INDIANAPOLIS AND BELLEFONTAINE RAILROAD COMPANY *v.* THE CITY OF INDIANAPOLIS.

KETCHAM *v.* THE SAME.

To constitute a dedication, there should be a clear intention to devote the ground claimed to have been dedicated to the use of the public.

Square 50 in the town of *Indianapolis* was dedicated to the public as a market space, by the action of the commissioners appointed to lay off said town pursuant to the act of 1821. (Acts of 1821, p. 44, § 4.)  By an act of 1837, the south half of said square was exchanged for a part of the north half of square 48, and deeds in fee simple made.  The deed to the town of *Indianapolis*, though it recites that it was given in consideration of the south half of square 50, does not express the purpose of the grant.

*Held*, That by the act of 1837, the part of square 40 was dedicated to the public in lieu of the half of square 50; and that act, being a public one, entered into and formed a part of the deed, and rendered a statement in the deed of the purpose of the grant unnecessary.

*Held*, also, that said part of square 48, having been so dedicated, it could not be sold on an execution against the corporation of *Indianapolis*.

APPEAL from the *Marion* Circuit Court.

DAVISON, J.—The case made by the record is substantially as follows:  An act entitled " An act appointing commissioners to lay off a town on the site selected for a permanent seat of government," approved *January* 6, 1821, directed the commissioners to appoint a surveyor, who, after laying off the town, should make out two complete copies of the plan of said town on parchment or paper, designating, *inter alia*, the contents of each square that may be noted on the plan thereof as public ground, and for what intended, whether for civil or religious purposes. Acts of 1821, p. 44, § 4.  Under this act, the town of *Indianapolis* was laid out, and the plan thereof duly recorded in the recorder's office of *Marion* county, and upon said plan the south half of square No. 50 is designated " *Market-space*."  By an act approved *February* 6, 1837, entitled " An act authorizing an exchange of certain grounds in *Indianapolis*, between the town and state," it was provided " That the board of internal improvement should take pos-

May Term,
1859.

THE PRESI-
DENT, &c.
v.
THE CITY
OF INDIAN-
APOLIS.

session, for the use of the state, if they should deem it for her interest so to do, of the south half of square No. 50, which was granted to *Indianapolis* by an act approved *January* 6, 1821; and in lieu thereof to set apart such portion of the north half of square No. 48, yet owned by the state, as they shall deem just to said town, for a 'market-space;' and upon the corporate authorities of that town agreeing, by order on their books, to receive such part of square No. 48, so to be set off as aforesaid, then the agent of state for *Indianapolis* is hereby authorized, and it is made his duty, to give said town a deed for the same in fee. And the corporate authorities shall, at the same time, relinquish to the state by deed all of said half square No. 50, which deed shall be given to said board of internal improvement," &c.   Local Acts of 1837, p. 411, § 1.

In pursuance of this act, that board, on the 16th of *June*, 1837, " Ordered, that lots numbered 1, 3, 10, 11, and 12, in square No. 48 in *Indianapolis*, be set apart to said town, in lieu of the south half of square No. 50, taken possession of by the state for the use of water power, &c., provided the corporate authorities of the town shall accept said part so set apart, &c., as aforesaid, and make a deed to the state for 'half square No. 50,' pursuant to the act approved *February* 6, 1837."

On the 3d of *July*, 1837, the trustees of *Indianapolis* ordered "that the north half of square No. 48, being lots numbered 1, 3, 10, 11, and 12, be accepted in lieu of the 'half square No. 50,' and that a deed be made to the state pursuant to the requirements of the act of *February*, 1837." And afterwards, on the 24th of *January*, 1838, they, the trustees, made such deed, which, after reciting substantially the said act, the above order of the board of internal improvement, and the order of said trustees, conveyed to the state, in fee simple, the aforesaid "half square No. 50." And the deed thus made expressly recites that that square is "conveyed in lieu of the north half of lot No. 48, so set apart by the board of internal improvement to the town of *Indianapolis*, as aforesaid."

After this, on the 21st of *June*, 1838, *Thomas H. Sharpe*,

May Term,
.1859.

THE PRESI-
DENT, &c.
v.
THE CITY
OF INDIAN-
APOLIS.

the then agent of state for the town of *Indianapolis*, executed and delivered to the common council of said town, and their successors in office, a deed of conveyance in this form: "That the said agent, for and on behalf of the state, in pursuance of the provisions of the law of *Indiana*—'An act appointing commissioners to lay off a town on thé site selected for the permanent seat of government, approved *January* 6, 1821'—and in consideration of the south half of square No. 50, known as the market-space, which has been deeded to the state, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, conveyed, and confirmed, and by these presents doth grant, bargain, sell, convey, and confirm, unto the said common council, and their successors in office and assigns forever, all the following described lots in the town of *Indianapolis*, *Indiana*, viz., lots numbered 1, 3, 10, 11, and 12, in square No. 48, together with all and singular the appurtenances thereunto belonging, &c., to have and to hold the premises hereby bargained and sold, to the only proper use and behoof of the said common council and their successors in office and assigns forever. In testimony whereof," &c.

This deed was duly recorded in the recorder's office of said county on the 7th of *October*, 1838.

At the fall term of the *Marion* Circuit Court in the year 1847, one *John L. Ketcham* recovered a judgment against the city council of *Indianapolis* for 237 dollars, upon which an execution was issued. By virtue of this execution, a portion of said square No. 48, including lot No. 10, was levied upon, and duly advertised for sale, and on the 24th of *August*, 1848, being the day of sale, was sold to *John L. Ketcham*, who received a sheriff's deed pursuant to the sale. After this, in *September*, 1849, *Ketcham*, by deed in fee simple, conveyed the lot by him purchased at sheriff's sale, to *John M. Talbott*. And afterwards, on the 3d of *October*, 1849, *Talbott*, by a similar deed, conveyed the same lot to the appellants, who were the defendants below. The city of *Indianapolis*, as successor of the town of *Indianapolis*, claims title to said lot, and as such, in this action recovered a judgment in the Circuit Court against

the defendants for possession, &c. Defendants appeal to this Court.

May Term,
1859.

THE PRESI-
DENT, &c.
v.
THE CITY
OF INDIAN-
APOLIS.

In support of this recovery, it is insisted that the lot in controversy, being a part of the north half of square No. 48, was dedicated by the state to a public use, namely, "a market-space," and was not, therefore, subject to sale on execution; while on the other hand, it is contended that a dedication for any purpose is not shown by the case made by the record. Which of these positions is correct?

To constitute a dedication, there should be a clear intention to devote the ground claimed to have been dedicated to the use of the public. *Pennington* v. *Willard*, 1 R. I. R. 93.—*The City of Cincinnati* v. *White*, 6 Pet. 435. And whether, in this instance, such intention existed, is to be determined by reference to the act of *February* 6, 1837, and the various subsequent transactions which resulted in the conveyance of the half of square No. 48 to the town of *Indianapolis*. As we have seen, the act of 1837 plainly recognizes the south half of square No. 50 as having been granted for "a market-space," and proposes, in lieu thereof, to grant the north half of square No. 48 for a similar purpose. This was simply a proposal to change the location of the "market-space," in order that the interest of the state might thereby be accommodated. It is therefore evident that the legislature, by the act to which we have referred, intended that the property proposed to be given in exchange for the "market-space" should, when accepted by the town of *Indianapolis*, be devoted to the same purpose. And the corporate authorities of the town, having acceded to the proposal, must be presumed to have acted, in making the exchange, with a like intention. Indeed, the city of *Indianapolis* never had any title to the "half of square No. 48," save that which is founded on the act of 1837; and when it is noted that that act defines the purpose for which the square in question should be granted, it cannot be assumed that she ever held it for any purpose other than that defined in the act. It is true, the deed from the agent of state to the common council of *Indianapolis*, though it recites that it was given in consideration

May Term,
1859.

THE PRESI-
DENT, &c.
v.
THE CITY
OF INDIAN-
APOLIS.

of the "half of square 50," does not express the purpose of the grant. But that defect, if it be one, when considered in reference to the entire case, is not material; because the deed, to be at all operative, must be regarded as having been executed pursuant to the act of *February*, 1837. To make the deed, the agent had no authority save that which he derived from that act. And the same act, being a public statute, in legal contemplation, has entered into, and constitutes a part of, the agent's deed to the common council. 4 Blackf. 234.—13 Mass. R. 16.—7 Ind. R. 373.—10 *id.* 534.

In our opinion, the case stands upon the same ground upon which it would have stood had the deed recited the act of 1837, and, in addition, expressed the special purpose of the conveyance.

It follows that the "half of square 48" was granted for a public use, viz., "a market-space," and was accepted for that use and no other.

The next question to settle is, was lot No. 10, being included within the "market-space," subject to sale on execution? It is, indeed, very clear that that "half square," having been granted for a particular purpose, the corporate authorities would have no right to dispose of it by sale, or otherwise use it in a way different from the object for which it was granted. 2 Smith's Lead. Cas. ——, and cases there cited. And it would seem to follow, that its purpose could not be changed by a judicial sale. The corporation of *Indianapolis* is, in respect to the half square in question, a mere trustee, holding it for a special public use; and it cannot, therefore, be made subject to the payment of corporate debts. 7 How. 220.—6 Hill, 407.—4 J. J. Marsh. 597.

Our opinion is, that the sheriff's sale, in this instance, is a nullity, and that the several deeds following that sale are inoperative.

*Per Curiam.*—The judgment is affirmed with costs.

*S. Yandes* and *C. C. Hines,* for the appellants.

*S. V. Morris* and *N. B. Taylor,* for the city.