## MANSUR *v.* The State.

CRIMINAL LAW.—*Obstructing Highway.—City.—Alley.—Dedication of Ground to Public Use.—Acceptance of.—Intention.*—On the trial of an indictment for obstructing a highway, the evidence disclosed the following facts, viz.: That in 1853 the owner of a certain block in a city conveyed to the defendant a certain portion thereof, described by metes and bounds, together with an "alley easement" and right of way, of a certain width, on one side of the tract conveyed; that in 1856 the defendant erected a fence along such alley, throwing out a portion of his lot in common with the alley; that the opposite portion of such block, across the alley, remained unimproved until 1864, when a purchaser thereof enclosed the same, leaving an alley which had a width, between his fence and that of the defendant, of more than ten feet, in which situation the last mentioned portion of such block was purchased by the prosecuting witness; that in 1874 the defendant had his line established by the city civil engineer, who located the corners on the alley outside of the defendant's fence; that the defendant thereupon erected his fence on the line established by the surveyor, being the true line, and thus reduced the alley below the width of ten feet; that the defendant had, ever since his purchase, paid taxes on that portion of the alley thus enclosed, and also for street improvements bordering thereon, made by direction of the city; that the alley had been used, until the removal of the fence into the alley, by the owner of the opposite portion of the block, for his own convenience, and by others in hauling hay, wood, grain and milk, but had never been worked or platted by the city as a public alley or highway; and that the true ten feet for an alley had been reserved by the original owner and grantor of such block.

*Held,* that the defendant is not guilty.

*Held,* also, that there was no dedication of his ground for an alley, by the defendant.

*Held,* also, that, to constitute a dedication, there must be a clear intention to devote the ground, claimed to have been dedicated, to the public use, and also an acceptance of the same by or on behalf of the public.

From the Marion Criminal Circuit Court.

*J. T. Dye* and *A. C. Harris,* for appellant.

*G. H. Chapman, U. J. Hammond, J. J. Hawes* and *C. A. Buskirk,* Attorney General, for the State.

WORDEN, J.—This was an indictment, against the appellant, for obstructing a highway, viz.: an alley in the city of Indianapolis.

Trial by the court, conviction and judgment.

The case is before us for review on the evidence.

In 1853, Jesse L. Williams conveyed to Jeremy and' Isaiah Mansur a part of block number 16 in Indianapolis, described as follows, viz.: Beginning at the south-west corner of the block or square, and running thence north, with the east line of Meridian street, two hundred and seven and a half (207½) feet; thence east one hundred and ninety-five (195) feet; thence south two hundred and seven and a half (207½) feet; thence west, with the north line of Vermont street, one hundred and ninety-five (195) feet, to the place of beginning, together with an "alley easement" and right of way in and through and along the eastern and northern boundaries of the tract so described; the alley on the north to be ten feet wide, and that on the east to be fifteen feet wide.

In 1866, Jeremy Mansur released and quitclaimed to Isaiah the west eighty-seven and one-half feet of the ground above described. The alley running along the north end of the appellant's property ran east to the north and south alley.

It appears that the property lying north of the appellant's and across the alley was unimproved and unenclosed until 1864, when it was enclosed and a house built upon it. It was proved by John C. Wright, that the alley between the property of Mr. Haughey, across the alley north of the appellant's, and the appellant's had been open for 15 or 18 years; that Mansur's north fence had stood where it was before it was removed in August, 1874, for from 15 to 18 years; that the alley, before the removal of the fence, was fifteen feet wide; that the alley was used by Mr. Haughey, J. A. Bradshaw, John C. Wright, and sometimes by Mr. Holliday; that the alley was obstructed by Mansur's fence, which had been set in August, 1874, so as to leave it only about eight and one-half feet wide. It was proved by John A. Bradshaw, that the fence had been placed as it stood before August, 1874, from 15 to 18 years ago by Jeremy and Isaiah.

Mansur. When the fence was placed there, the ground north of the alley was vacant and unimproved. The lot north of the alley was first enclosed by Mr. Holmes. T. P. Haughey testified, that the alley was of the same width and unchanged from the time he bought his property until Mansur moved his fence in 1874; that, before Mansur put his fence out in the alley, the alley was twelve to fifteen feet wide; after the fence was moved, it was left about eight or nine feet wide. It was the most convenient way from the front part of his house to his stable. He used it for going to his stable, and in hauling hay and grain thereto. It is now too narrow to haul a load of hay through. A person can drive a buggy or wagon through by careful driving, but there would be no room on either side for a person or animal to pass. Before the defendant moved his fence out into the alley, the alley was used considerably by persons hauling wood, hay, grain, and by milk wagons.

James Brown testified, that he was city civil engineer, and that in August, 1874, Mansur called upon him to survey his lot and ascertain the true north line thereof, so that he might know where to set his fence; that he did so, and set stakes on the north line of the lot and south line of the alley, as shown by the deeds.

It was agreed that the alley had never been platted, nor improved, nor worked by the city, and that Mansur had paid taxes on the whole of the ground enclosed by his present fence, and which had been assessed to him. The street improvements on Meridian street fronting the ground enclosed by Mansur's fence had also been assessed to him by the officers of the city, and he had paid the same.

The appellant testified, that he placed the fence (that which is complained of as an obstruction) on the line indicated by the city civil engineer, as above stated. It was also agreed that the ten feet for an alley were reserved by the State in the conveyances. This is the substance of the case made by the evidence.

We think it is clearly enough shown that the appellant, when he removed his fence in 1874, placed it on his true north line, as indicated by his title deeds. There is nothing in the evidence to impugn the correctness of the survey made by the city civil engineer, nor to show that the fence was not placed on the true line, as shown by that survey. The alley was left, to be sure, something less than ten feet in width, but it is not impossible that the fence surrounding the lot lying north of the alley may have encroached upon it to some extent. There is nothing to show whether that fence was placed upon the true line or otherwise.

The question then arises, whether the evidence was sufficient to establish a dedication to the public, for the use of a street or alley, of that part of the appellant's ground which lay between his old fence and his true northern boundary, on which the fence was placed in 1874.

The old fence remained where it was originally placed from 15 to 18 years. In the mean time, the alley, including, we may infer, the strip of the appellant's ground outside of the fence, was used by the persons named, and also by persons hauling wood, hay and grain, and by milk wagons.

The only evidence in the record showing an intent to dedicate the strip of ground are the facts that the fence was originally placed inside of the line and suffered to remain there 15 or 18 years; and, in the mean time, the alley, including the appellant's strip of ground, was used in the manner above stated, without any objection, so far as the evidence shows, on the part of the appellant.

In the case of *The President, etc.,* v. *The City of Indianapolis*, 12 Ind. 620, it was held, that, " To constitute a dedication, there should be a clear intention to devote the ground claimed to have been dedicated to the use of the public." We are of opinion that the evidence fails to establish such intention.

It is frequently the case, and especially during the early

growth of towns and cities, that men fence in their lots without taking much care to place their fences on the exact boundaries. They may do this without any intention whatever to dedicate any part of their ground outside of their fences, which may lie along a street or alley, to the public, for the use of such street or alley. When fences are thus built, they are frequently, if not usually, suffered to remain until they need replacing by new ones. In the mean time, the portion of their grounds outside of their fences, and adjoining a street or alley, is used as such, with the street or alley. Of this the owner does not complain, because he is not injured thereby. If the owner discovers that his fence is inside of his line, he may not choose to remove it at once, but may prefer to let it stand until it shall need rebuilding, and then place it upon the true line. These things do not, in our opinion, establish an intent on the part of the owner to dedicate the ground to the use of the public.

But, to constitute a dedication, there must be not only an intent to dedicate on the part of the owner, but also an acceptance by or on behalf of the public. The evidence of acceptance in this case is, if possible, less strong than that of the intent to dedicate. If the strip of ground had been dedicated and accepted so as to become a part of the alley, it was under the complete and entire control of the city as such, and yet no act of the city or any of its officers is shown, whereby the city exercised or claimed any control over it as a part of the alley. The city, indeed, had never platted, or worked, or improved the alley. The acts of the city were utterly at variance with the theory that the strip of ground constituted a part of the alley. If it was a part of the alley, the city had no right to assess the appellant with the costs of the improvement on Meridian street, fronting it; yet this was done by the city, and the assessment was paid by the appellant.

No affirmative act was shown, whereby the city recog-

nized the strip of ground as part of the alley; but the converse was clearly shown by the acts of the city in making and receiving the assessment.

The authorities are not entirely uniform in respect to the question, whether there can be an acceptance of land for the use of a highway, without the consent, express or implied, of the city, town or body that has control of the highways and is bound to keep them in repair. Perhaps it may be said, that the weight of American authority is against such acceptance. Thus, in *Commonwealth* v. *Kelly*, 8 Grat. 632, 636, it was said by the court: "It is clear that there must be not only a dedication, but an acceptance of the road. What is an acceptance? Is the mere passing over the road by individuals an acceptance? If so what number of men passing over it will amount to an acceptance—ten, fifteen, twenty, or what number? It is obvious, if the acceptance depends upon the number of persons passing over the road, there will be often great uncertainty, whether the road be public or not, which may give rise to much troublesome litigation. To guard against this uncertainty and litigation, the right of acceptance ought to be vested in some public body. And we think that by the laws of this State this right is vested in the county courts. They alone are authorized to establish public roads, and they are to see that they are kept in repair."

In *Bowers* v. *The Suffolk Manufacturing Co.*, 4 Cush. 332, 340, it was said: "We are strongly inclined to the opinion, that whatever may be the law in England, in this Commonwealth, no public way can be established by dedication merely, and without the assent, express or implied, of the city or town bound by law to keep it in repair."

In *Mayberry* v. *Inhabitants of Standish*, 56 Me. 342, it was held, that, when long continued, uninterrupted public use of a way is offered in proof of a highway by dedication, there must also be evidence of an acceptance

by the town in its corporate capacity, or of some recog- nition of it as a highway, on the part of some lawfully authorized agents of the town.

So, in the case of *The City of Oswego* v. *The Oswego Canal Co.*, 6 N. Y. 257, it was held, that, where lands are dedicated by the owner to public use as streets, they do not become public highways until accepted as such by the public authorities.

See, however, *Holdane* v. *The Trustees, etc., of Cold Spring*, 21 N. Y. 474; Angell Highways, section 157; Thompson Highways, p. 54.

We do not find it necessary, however, to pass upon this question.

Assuming, without deciding, that ground in a city may be dedicated to the use of the public for a street, without the affirmative consent of a city, express or implied, so as to become a public street; still, where the city, which has exclusive jurisdiction and control over the streets and alleys therein, and represents the public in respect thereto, treats the ground as private property and makes assess- ments upon it as such, this is strong, if not conclusive, evi- dence, that it has not been accepted by the public as a street.

The remarks of PARKE, J., in the case of *The King* v. *The Inhabitants of Leake*, 5 B & Ad. 469, 482, are applicable to this view of the case. He said : " I have always considered it as clear that the parish is at common law bound to repair all public highways ; this being by the common law, the mode by which each parish contributes its share towards the public burthen of repairing all highways, instead of all the public roads being repaired by one general tax. Hence, if a road be dedicated to the public, no parish can refuse to repair it. It must bear in that shape its share of the general burthen, and its inhabitants receive an equivalent, not in the use of that road in particular, but in the use of all the public roads in the realm.

" The absence of repair by the parish is indeed a strong

circumstance, in point of evidence, to prove that the road is not a public one,—the fact of repair has a contrary effect; but the conduct of the parish in acquiescing or refusing its acquiescence is, in my opinion, immaterial in every other point of view."

We are of the opinion, that the motion for a new trial should have been granted.

The judgment below is reversed, and the cause remanded for a new trial.