MICHAEL MURPHY & others *vs.* COMMONWEALTH.

Essex.    November 1, 1904. — February 27, 1905.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Adverse Possession.  Municipal Corporations.  Evidence,* Competency.  *Real Action.  Pleading, Civil.  Witness,* Cross-examination.  *Practice, Civil,* Exceptions.

To prove title by limitation in a town to certain land on a beach, the town may put in evidence entries on the books of the town treasurer showing the receipt of rent for the land, leases of the land made by its selectmen, and votes of the

town authorizing the making of such leases by the selectmen and asserting the town's exclusive ownership of the land, tending, with the additional facts of occupation of the land by the lessees and payment of rent by them to the town, to show continuous and open possession of the land by the town through its lessees.

To show possession of certain land on a beach by a town under a claim of right, and also to show the authority of the selectmen of the town to deal with the land, the town may put in evidence an indenture between the town and the owner of adjoining land, adjusting a boundary of the land in question, and containing a copy of a vote of the town referring the matter of the adjustment of the boundary to the selectmen with full power to act thereon.

The plea of *nul disseisin* in a real action is an assertion of possession under title.

On the issue of the title to certain land claimed by a town under adverse possession beyond the period of limitation, if the claimant against the town has testified that he went upon the land and told the lessee of the town that he owned it and then withdrew upon being told that he must settle the matter with the town, he cannot be asked in his own behalf what his intention was in going upon the land and informing the lessee that he owned it, as his undisclosed intention cannot affect the character of his act, or make it any the more an interruption of the peaceable possession of the town.

On the issue of the title to certain land claimed by a town under adverse possession beyond the period of limitation, the town can show by cross-examination of the claimant against the town that the witness never paid any taxes on the land and that he knew of no one paying taxes upon it for him or for any of the heirs at law of the ancestor under whom he claimed, this tending to show by inference that no taxes had been assessed because the town claimed title.

For the purpose of acquiring title to land by limitation, acts of disseisin and of letting the land to a tenant done by a town under a claim of right have the same effect as similar acts done by any other corporation or by an individual. In determining whether the possession of an actual occupant is the possession of the town all the acts of the town relating to the matter are to be considered.

A town may let land for hotel purposes.

The occupation of a tenant in possession of land under a lease in writing, for the purpose of establishing adverse possession under a claim of right by his landlord, extends, if not actively interfered with, to the whole premises described in the lease if the tenant has actual physical possession of any part.

A city or town can acquire land for a purpose not public by adverse possession beyond the period of limitation.

No exception lies to the refusal of a request for a ruling founded on the assumption of a fact in dispute.

No exception lies to the refusal at the hearing of a motion for a new trial to make a ruling of law upon a question raised at the trial.

BARKER, J.   This was a petition for damages for the taking of twenty-two thousand square feet of land lying on the ocean side of Nahant Neck between Nahant Road and the sea, in the general locality known as Long Beach.   The taking was made by the metropolitan park commissioners on September 26, 1900. The respondent admitted the taking but denied title in the petitioners.   They claimed title under Thomas B. Murphy who died

on September 10, 1861, and proved that whatever title he had in the land was in them at the time of the taking except so far as it may have been lost through adverse possession by the town of Nahant. Their evidence tended to show that the land was part of a tract of four acres called Lindsey Marsh. The respondent contended that Daniel Fairchild who deeded to Thomas B. Murphy on September 23, 1859, was then disseised, that the land was no part of Lindsey Marsh, that Lindsey Marsh was wholly on the harbor side of the Nahant Road, and did not extend across the road and on both sides of it, that the land was part of Long Beach so called, and that it was owned by the town of Nahant.

In answer to specific questions the jury found that Murphy's grantor was not disseised when he gave his deed, that Lindsey Marsh was on both sides of the Nahant Road on Long Beach, and that the land was a part of Lindsey Marsh.

The verdict was for the respondent and the case is here upon a bill of exceptions which comprises certain exceptions taken by the petitioners at the jury trial, and an exception taken by them upon the hearing on a motion for a new trial.

Several of the exceptions were to the admission of evidence. Before examining them in detail it is well to state that the territory now Nahant was a part of Lynn until March 29, 1853, when Nahant was incorporated as a separate town by St. 1853, c. 114, the dividing line between the two municipalities being a line drawn east and west across the course of Long Beach, and running at right angles with the course of that beach from a certain sign post, which then gave the length of the beach, to low water on the ocean side, and at right angles with the course of the same beach, from the same sign post to low water on the harbor side. See St. 1853, c. 114, § 1. Long Beach was about two and one half miles long, two in Nahant and the rest in Lynn. It was undisputed that the town of Nahant owned much land on Long Beach, near to the land described in the petition and running toward Nahant several thousand feet on Nahant Road, all of the land being unenclosed and mostly vacant, and not built upon or improved by the town itself, although its selectmen had leased or rented two adjoining parts of it, one to one Soule and the other to one Massey.

The deed of September 23, 1859, to Murphy fixes the northwest corner of the land deeded as at the central stone monument between Lynn and Nahant and describes a parcel of land lying on the easterly side of what commonly is called the Nahant Road and between that road and the ocean, eight rods wide on the westerly end and four rods on the easterly end where it touches the sea, its southerly line being twelve rods in length and its northerly line fifteen. There thus was left between this land and the division line of Lynn and Nahant a triangular piece of land about one hundred and fifty feet in width at high water mark and decreasing in width to nothing at the northwest corner of the land deeded. The deed recites that the land conveyed is " a certain parcel of marsh and beach land being part of the eastern half of the marsh and beach known by the name of ' Point Close ' or Lindsey Marsh . . . said marsh being now covered by the sand of Long Beach."

The evidence tended to show that the land leased to Soule was bounded northerly by the town line, easterly by the ocean, and westerly by the Nahant Road, and that it extended so far southerly as to include all of the land to which the petitioners contend that they had title at the time of the taking and considerable other territory, and that it was bounded on the south by the land leased to Massey ; that neither of these parcels was enclosed by fences, and that the general nature of the occupation of each was that of a place for seashore resort. On the Soule parcel was a building owned by the lessee called Hotel Nahant, the exact location of which was in dispute. Although the jury found that the land in question was part of Lindsey Marsh we think it plain that during the period to which the evidence was addressed it also was a part of the Long Beach.

The books of the town treasurer of Nahant, under the caption " Land rent Long Beach," show entries of the receipt of sums of money for the years 1859–1900 both inclusive, with the exception of the years 1862, 1868, 1873, 1878, 1884, 1892 and 1893. The entries down to and including 1882 tend to show that the amounts received were paid by Samuel Soule. Those from 1883 to 1891 inclusive tend to show that the payments were made by S. Soule and Son by S. N. Breed and Company, those of 1894 and 1895 that the payments were made by S. N.

Breed and Company, and those for 1896 and thereafter the payments were made by D. L. Trafton. No entry other than the caption "Land rent Long Beach" appeared on the books to identify either the location of the premises for which rent was received from Soule or the other persons named or the quantity of land. The books were produced in court by the town treasurer, then serving his second year, who testified that the rents were received for land on which stood the Hotel Nahant and the picnic park buildings, and that there was nothing on the book to tell where the land was located other than somewhere on Long Beach. The petitioners excepted to the admission in evidence of the treasurer's book with the above mentioned entries.

Frank Soule, called by the respondent testified to the death in 1890 of his father Samuel Soule; that his father was in the hotel business, and that his hotel was located on the beach close to the Lynn line on the ocean side of the road leading to Nahant; that the hotel occupied land extending from the Lynn line about three hundred and fifty feet toward Nahant; that the land was unenclosed and the buildings did not cover the whole of it; that he was in business with his father after 1876; that the firm leased the land upon which the hotel and buildings stood; that he had attempted to find the old leases and had found one for the year 1880 and that the others had been lost; that they always hired the same land continuously from year to year and hired it from the town of Nahant, and paid rent to the town and never to anybody named Murphy or claiming under Thomas B. Murphy; that his father had told him that he began to hire the land in 1856; that his own recollection went back into the sixties, that his father was continuously in possession down to 1890, and that from the time of his own recollection down to 1890 nobody besides his father and himself was in possession of the land; that they occupied from the Lynn line about three hundred and fifty feet, and that during all the time that they were there the possession of the land was never interfered with at all by the Murphys. The same witness also testified as to the size, location, use and time of erection of different buildings on the land; that the land between the Lynn line and the buildings was occupied by walks from the roadway to the hotel, but mostly was vacant and was occupied by his father and himself

in connection with the hotel; that the Massey land was between three hundred and fifty and four hundred feet from the Lynn line, and that he had occupied under the lease which he produced and which was dated February 28, 1880, and was for the term of five years from January 1, 1880, and also under another lease which was produced by another person, dated July 2, 1883, and which purported to be made by the town of Nahant by its selectmen to Samuel Soule and Son for the term of ten years from March 18, 1883. Each of these two leases purported to be signed by the selectmen of Nahant and by the Soules. The two leases were admitted in evidence against the objection of the petitioners, and they excepted.

Certain votes of the town of Lynn passed on March 18, 1837, and votes of the town of Nahant passed on April 16, 1853, March 12, 1859, March, 10, 1860, March, 1864, and March, 1870, were admitted in evidence against the objection of the petitioners, and they excepted. The votes of Lynn were that five persons named " serve as beach committee the ensuing year," and " that no person be allowed to take seaweed from the bay side of Long Beach, for the year ensuing." The Nahant vote of April 16, 1853, seems to have been passed at the first meeting after the incorporation of the town on March 29, 1853, and was " That the selectmen be empowered and directed to take all legal measures for the preservation of Long and Short Beaches." The Nahant votes of March 12, 1859, are longer. The first begins with a recital that " Whereas the ownership and fee of the beaches, shore and strand surrounding the town . . . are claimed as the property of the town, and whereas, divers persons owning land abutting on said beaches, shore and strand, and others, have obstructed the access thereto, by erecting fences or buildings thereon, or otherwise . . . and by continuing such obstructions may possibly acquire rights adverse to those of the town, and of the public, Voted, That the town claims to be the owner in fee of all the said beaches, shore, and strand . . . subject always to the public rights of navigation, fishing, fowling, and bathing thereon, in such manner as may not be inconsistent with the laws, and police regulations, of the Commonwealth, and this town."

The second, so far as it relates to beaches, is this: " Voted,

That the town disputes and denies the right of any person or persons to the exclusive use of the said beaches, shore, or strand, . . . and also the right of any person or persons to exclude the public therefrom, or from the use and enjoyment thereof for the purposes aforesaid ; excepting those places in which the town, or the selectmen thereof, have granted, or may hereafter grant, such exclusive rights. "

The third vote, so far as it relates to the beaches, is this : " Voted, That notice of the intent of the town to maintain its legal rights as aforesaid, be given by serving the owners of all lands abutting on said beaches, shore, or strand . . . by serving them individually with copies of these votes, in the manner prescribed in the 28th section of chapter 60, of the Revised Statutes, and by having them recorded in the Registry of Deeds." The section referred to in the third vote is one providing a method by which the owner of land may prevent the acquiring of certain rights therein.  See Rev. Sts. c. 60, §§ 27, 28.

The vote of Nahant passed on March 10, 1860, is this : " Voted, That the selectmen be authorized to tear down any fence, remove any building, fill up any well, etc. which may be built or dug on Long Beach."

That of March, 1864, is as follows : " Voted, That the selectmen be instructed to post at the further end of the beach a notice of the act forbidding all persons to remove seaweed, sand, etc. from the beach, and that the constables prosecute all violations of the existing law that may come to their notice."

In connection with this vote we notice the fact that the removal of " any stones, gravel, or sand, from the Long Beach in the town of Lynn," was forbidden under a penalty, one half of which was to be for the use of the town of Lynn, by St. 1848, c. 200.  Also that by St. 1852, c. 214, it was provided that no person should carry away " any seaweed from the Long Beach, in the city of Lynn, without permission first obtained from the city council of said city, or from some person or persons duly authorized by the said city council to grant such permission," and that one half of the penalty for offending against the provision should be for the use of the city of Lynn.  Also that by St. 1854, c. 294, it is provided that no person shall remove " any seaweed, sand, stones, gravel or mud, from either of the

beaches called Long Beach or Little Beach, in the town of Nahant, without permission first obtained from the selectmen of said town of Nahant, or from some person or persons duly authorized, by the selectmen of said town, to grant such permission," and that one half of the penalty for any violation of the prohibition shall be "for the use of said town of Nahant."

The Nahant vote of March, 1870, is this: "On Article 7 in the warrant — to see if the town will authorize the selectmen to lease the beaches and town lands — Voted: That the selectmen be authorized to lease as much of the public lands, including Long and Short beaches, as may in their judgment be for the interests of the town."

We think that the entries in the town treasurer's books, the leases and the votes stated were all properly admitted in evidence. They tended to show that from its first incorporation in 1853 the town had claimed the fee of the land in dispute, as a part of Long Beach, and that from 1859 the town continuously had leased the land through the agency of its selectmen, and had received the stipulated rent in most of the years from 1859, and that the town denied ownership in any other person and had continuously maintained an open possession of it through its lessees.

The title of towns in this Commonwealth to lands bordering upon the sea has not unfrequently been before our courts for adjudication. In *Boston* v. *Richardson*, 105 Mass. 351, ancient orders of the selectmen of Boston giving liberty to set up a fish house or to occupy a fish stall taken in connection with the evidence of the subsequent occupation of the premises for the purpose mentioned in them were held admissible upon the question whether the city of Boston held title to certain flats. Here although neither of the two leases was an ancient document, yet taken in connection with the facts that the lessees occupied under them and in fact paid rent to the town, the leases tended to show actual possession by the town through its lessees under a claim of title in fee.

The vote of Lynn in 1837 forbidding the taking of seaweed from the bay side of Long Beach was before the enactment of the Legislature upon that subject, and when St. 1848, c. 200, and St. 1852, c. 214, were passed, the town of Lynn was to have

an interest in all penalties.  These circumstances point clearly enough to a claim of ownership on the part of the town of Lynn, of which Nahant is the successor, to make them admissible in evidence upon the question of the attitude of Nahant as a town toward the Long Beach which was in dispute at the trial.  It has been said that the extent of the authority of selectmen as special agents of their town " may indeed depend largely upon long continued usage and custom."  Colt, J., in *Clark* v. *Russell,* 116 Mass. 455, 457.  We think all of the evidence which we have stated tended to show that the town of Nahant continuously has claimed title to Long Beach, and that.its selectmen have been its special agents in dealing with the beach, that the Soules were occupying under the town and with an open claim of ownership in the town adverse to all others, and so that all the evidence stated was admissible.

An indenture made on July 20, 1874, between the town of Nahant and John P. Woodbury was admitted in evidence against the objection of the petitioners, and they excepted. This instrument recited that a dispute had arisen between the parties to it as to the boundary between their lands and that they had agreed upon a division line which was described; that the town granted and released to Woodbury all the land west of that line and that he forever quitclaimed to the town all the land east of the line.  The division line began in the town line between Lynn and Nahant and ran southerly over seven hundred feet, and the land which Woodbury thus released to the town included the land in question.  Upon this indenture was a copy of a vote of the town of Nahant passed March 14, 1874, by which, upon an article in the warrant " To see if the town will quitclaim certain land on Long Beach to J. P. Woodbury," the town " Voted, that the matter be referred to the selectmen with full power to act thereon."

We think the indenture was properly admissible as tending to throw light upon the issue whether the town stood towards the land in the attitude of one claiming title, and also upon the question of the authority of the selectmen under usage and custom to act for the town in its dealings with Long Beach.

The petitioners offered in evidence the record of a suit upon a writ of entry brought by Woodbury against the town of Nahant

in the year 1871, to try title to four acres of land. In the suit Woodbury had disclaimed title to the land now in question, and the town of Nahant pleaded *nul disseisin* as to the whole four acres. The record was offered as tending to show that at the time of the indenture the town of Nahant had no title to the land and that the petitioners had title, and as tending to show that the town had not up to that time made any adverse claim to the land and was not in adverse possession. The record was excluded and the petitioners excepted. But the plea of *nul disseisin* was an assertion that the town was in possession under title. *Higbee* v. *Rice*, 5 Mass. 344, 352. *Burridge* v. *Fogg*, 8 Cush. 183. *Tappan* v. *Boston Water Power Co.* 157 Mass. 24, 31.

The record disclosed as we understand the statement of it in the bill of exceptions only the writ and pleadings in the suit. So far as it disclosed assertions or admissions of Woodbury they were as to the petitioners *res inter alios*, and immaterial. So far as the record disclosed pleadings on the part of the town there was nothing to show that even if responsible for them they had any tendency either to prove title in the petitioners or lack of title or possession in the town. This exception must be overruled.

Michael Murphy, one of the petitioners, testified that in the year 1883, when the Hotel Nahant was being enlarged, and he discovered that it was being built over on the land claimed by the petitioners, he went upon the land and saw Samuel Soule and showed him the deed of September 23, 1859, from Fairchild to Thomas B. Murphy, and told Soule that the building was partly on his (Murphy's) land, to which Soule replied that he must settle that matter with the town of Nahant, as he had a lease. Murphy was then asked, " When you went upon the land and found what was there and when you went to Mr. Soule and showed him your deed and informed him that he was over upon your land, what was your intention? " He was also asked, " What was your intention going upon the land at that time?" Both of these questions were excluded and the petitioners excepted to the exclusion.

We infer from the statement of the bill of exceptions that these questions were asked for the purpose of showing that the witness went upon the land for the purpose of regaining possession

as against the claim of the town of Nahant or any other party, that the answer of the witness would have been that his intention in going upon the land was to regain possession of it. The bill does not state what the answer of the witness would have been, nor that any disclosure of the purpose of the questions was at the time made to the court. However this may have been we think the questions were rightly excluded. The secret and undisclosed intention of the witness was immaterial. Whether his entry constituted an interruption of the peaceable possession of the town, could not depend upon the secret intention of the witness, but did depend upon whether his entry bore upon its face an intention to resume possession. See *Altemas* v. *Campbell*, 9 Watts, 28, 30, 31 ; *New Shoreham* v. *Ball*, 14 R. I. 566, 571. He exercised no act of dominion, but merely went upon the land and told the tenant that he owned it, and withdrew upon being told that he must settle the matter with the town. His undisclosed intention was immaterial.

The petitioner Murphy upon cross-examination testified against the objection and exception of the petitioners that he had never paid any taxes on the land, and that he knew of no one paying taxes upon it for him, or for any of the heirs of Thomas B. Murphy. We think that this testimony by inference tended to show, that the town claiming title no taxes had been assessed, sufficiently to make it admissible upon cross-examination of one of the petitioners.

The remaining exceptions relate to requests for instructions to the jury and to the request made to the judge for a ruling of law upon the hearing of the petitioners' motion for a new trial. Before the charge the petitioners requested the judge to give thirteen numbered instructions, and after the charge specified that they excepted to the refusal to give all of them except those numbered 1 and 2. At the close of the charge they requested the judge to rule that " the possession of the petitioners under their deed is presumed and follows the legal title unless the contrary is shown", and they then excepted to the refusal to give this ruling.

The thirteen requests were as follows :

1. The town of Nahant could not acquire any right in the land of the petitioners under any act of the selectmen, even

though made under a claim of right in the town, without a corporate vote.

2. The selectmen of the town would have no right to make a lease of the land of the town to any person without the corporate vote of the town, and any lease so made would be void.

3. If the jury should find that the selectmen made a lease of the petitioners' land under a vote of the town, authorizing them "to lease the lands of the town" or "land of the town on Long Beach" such lease would be void as against the petitioners, even though in so doing the selectmen thought the land so leased belonged to the town. And no possession of such land, however long continued, and even though rent was paid to the town by Soule or any other party in possession of the premises under such lease could give to the town any right of property in the premises, as against the petitioners, they being the true owners of the land.

4. The town of Nahant, to acquire any right in the petitioners' land, adverse to their legal title, must act by corporate vote; and such vote must show the clear intention of the town to claim the land of the petitioners as its own under a claim of right. That such a vote in itself would not give to the town any right or ownership in the land of the petitioners, unless possession was taken of the land by the town, and such possession by the town was held and continued uninterrupted and adverse to the petitioners for the full period of twenty years from the date of taking possession. And the burden is on the respondent to show the date when such possession was taken by the town and its continuance during the entire period. That any break in the possession of its continuance during the period would stop the running of the statute against the petitioners, and the period of twenty years would begin from the date of the last possession taken and shown.

5. That a lease of the respondent's land given by the selectmen is not possession of the land or any evidence of possession to sustain an adverse claim in the town.

6. That the respondent is bound to show the authority in selectmen of the town to make the lease of the petitioners' land, and this can only be done by proving the same by the records, showing the corporate vote.

7. That the inhabitants of the town or its officers claiming by right of the town entering upon and occupying the land of the petitioners are not agents or representatives of the town by whose acts the town could acquire rights or ownership in the petitioners' land without action by the town itself.

8. That the entries in the treasurer's book of the town of Nahant, showing payment of rent to the town "for land on Long Beach" by Soule, is not evidence of any claim of right by the town to the petitioners' land nor of any possession by the town of their land, or that the town knew it was receiving rent for their land or any portion of it, or that the town had any knowledge that the party paying the rent was occupying the petitioners' land.

9. That the possession by Soule of the petitioners' land was not the possession of the town, and the town could acquire no right adverse to the petitioners by any such possession.

10. That the town of Nahant had no authority under the law to make leases or to let to Soule for hotel purposes any part of Long Beach, giving him the exclusive use of said land as against the public rights. And such leases and letting was void, and any possession of the petitioners' land by Soule under such leases or letting would not be possession by the town so as to give to it any rights against the petitioners.

11. The party claiming adverse possession must show the part actually in possession and its exact measurements.

12. Adverse possession of part is not adverse possession of the whole.

13. A town cannot acquire land by adverse possession for any purpose except public purposes.

In dealing with this branch of the case, and premising that the jury was instructed that the burden was upon the respondent of proving that the petitioners could not recover because any title in them had been lost by adverse possession, it is to be borne in mind that that defence would be established by proof that the petitioners had been disseised and continuously kept out of possession for the legal term by a person or a succession of persons occupying the land continuously for that term, openly and adversely to the petitioners and under a claim of title adverse to them. *Harrison* v. *Dolan*, 172 Mass. 395. *Frost* v. *Courtis*, 172

Mass. 401. *Wishart* v. *McKnight,* 178 Mass. 356. *Jordan* v. *Riley,* 178 Mass. 524. Still there could be no doubt under the circumstances, shown by the votes and other records, that the town had acquired title through the possession of those who occupied the land under leases in which the town purported to be the lessor if the possession of the lessees had been so open, adverse and continuous for twenty years as to bar the title of the petitioners.

The theory of the requests numbered from three to ten inclusive seems to be that a town has no capacity to work a disseisin or to put a tenant in possession of land of which it has disseised the owner; that if a town should be held to have that capacity it can be exercised only by a direct and explicit vote of the inhabitants, and that as matter of law the evidence would not justify a finding that Soule's possession of the land from 1856 to 1890, and the possession of the other tenants from Soule's death in 1890, could be the possession of the town.

As to the first part of this theory we think that acts of disseisin and of the letting of land done by a town in connection with land the title to which it claims must have the same effect as similar acts done by any other corporation or by an individual. As to the second, all the acts of the town are to be considered in determining whether the possession of an actual occupant is the possession of the municipality. As to the third the evidence, particularly that of the witness Soule, tended to show that from the year 1856 until the year 1890 his father and himself had been in open, uninterrupted and exclusive possession of the land claiming as lessees of the town continuously during all that time and paying rent to the town during all that time, and that the town in leasing the land and in receiving the rent was so doing under a claim of title to the Long Beach, and that from the death of the elder Soule in 1890 to the bringing of the petition a similar condition had continued under other occupants. Therefore none of these requests could have been given in terms. The fourth request contained clauses relating to the burden of proof and as to continuity of possession, which were in effect given in the charge, which also instructed the jury that the selectmen were not agents of the town by virtue of their office simply, but that the votes of the town were evidence of authority.

The charge perhaps might have been more full upon the law

of prescription, but all the essential things were stated to the jury, who were told that the adverse occupation must be open, adverse, under a claim of right and continued without opposition for twenty years.

The tenth request proceeds also upon the theory that a lease of the beach for hotel purposes could not be made by the town. But we think that a town may lease for any legitimate purpose land of which it is seised.

The eleventh and twelfth requests are treated together by the petitioners, upon the theory that the possession of the Soules was not under color of title, and that therefore possession of such part of the land as was covered by building would not warrant a finding that land not actually in the physical occupation of the lessees was in their possession. But the lessees being in under written leases were occupying under color of that title to the occupation, and their possession if not actively interfered with would be coextensive with the premises leased if they had actual physical possession of any part.

The thirteenth request was properly refused for reasons already stated. Besides this, municipalities are not restricted as to the ownership of land to holding it for public purposes, and are no more restricted in acquiring title by prescription than in obtaining it by other methods.

The request presented after the charge was refused properly.* At that time the question whether the deed under which the petitioners claimed was void because the grantor was disseised when it was given was in dispute before the jury. If for this reason it had no operation there could be no presumption of possession under it.

The request for a ruling of law upon the petitioners' motion for a new trial was not addressed to any question not raised at the trial, and the exception to its refusal must be overruled. *Lowell Gas Light Co.* v. *Bean,* 1 Allen, 274.

<em>Exceptions overruled.</em>

*J. M. Raymond,* (*P. A. Kiely* with him,) for the petitioners.

*R. G. Dodge,* Assistant Attorney General, for the Commonwealth.

---

* The ruling requested was as follows: " The possession of the petitioners under their deed is presumed and follows the legal title unless the contrary is shown."