**UNITED STATES of America,**

v.

**Joseph P. PIZZO, Respondent.**

**No. M–18–304.**

United States District Court
S. D. New York.

Nov. 2, 1966.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for the United States; Samuel M. Eisenstat, Irwin B. Robins, Asst. U. S. Attys., of counsel.

Glabman & Rubenstein, Brooklyn, N. Y., for respondent; Jerome M. Leitner, Abraham Reingold, Moe D. Karash, Brooklyn, N. Y., of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEVET, District Judge.

This is a proceeding brought by petitioner, the United States of America, to require the respondent, Joseph P. Pizzo (who was engaged as a labor relations counsel), to turn over to the petitioner two certain groups of papers relative to an income tax investigation being conducted by the Internal Revenue Service. These papers, Court's Exhibits 1 and 2 for identification, have been deposited with the court pending the outcome of this proceeding. Although the United States originally sought to hold respondent in contempt of court for failure to produce the papers, it has withdrawn that application by reason of the fact that the papers have been deposited with the court. The United States contends the papers belong to an accountant; the respondent claims they belong to him and he raises the privilege of the Fifth Amendment.

Although the respondent originally waived any hearing, the court subsequently held a hearing, took testimony, and permitted oral and written arguments to be submitted. I now make the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On January 13, 1964, the respondent, Joseph P. Pizzo, was properly served with an Internal Revenue Service summons. (Petitioner's Exhibit 1; M. 4)

2. This summons directed respondent to appear before Internal Revenue Service Special Agent Stanley Fensterman on January 27, 1966, and to bring with him at that time the 1959 through 1963 work papers of Leo H. Fleischman, certified public accountant, used by Fleischman in the preparation of the 1959 through 1963 federal tax returns of Joseph and Frances Pizzo, and containing a listing and an analysis of the deposits and disbursements of Joseph Pizzo's checking account at the Royal National Bank of New York (formerly known as the Royal State Bank of New York). (Petitioner's Ex. 1)

3. Respondent did not appear on the return day and has not submitted these papers to Special Agent Fensterman or to the Internal Revenue Service. (M. 6)

4. When respondent did appear on August 30, 1966 in response to the said summons, he refused to answer any questions concerning the papers, claiming privilege against self-incrimination under the Fifth Amendment. (M. 97 and transcript of hearing before Special Agent Fensterman, Respondent's Ex. A)

5. Respondent concedes that the papers were in his possession at the time the summons was served on him and until they were turned over to this court by his attorney in the present proceeding. (M. 58)

6. The government concedes that the investigation of respondent's tax returns could lead to a prosecution for criminal fraud. (M. 16)

7. In September 1965, Pizzo telephoned Fleischman and told him that he wanted his lawyer to look over the papers in question, which Fleischman at that time held in his office file. A couple of days later Fleischman dropped them off at Pizzo's office. (M. 50–51, 90–91) These papers included Court's Exhibits 1 and 2 for identification. (M. 52)

8. Thereafter, Fleischman was served with a summons, returnable November 29, 1965, requiring production of the said papers. Fleischman then sent Pizzo a letter, dated November 8, 1965 (Respondent's Ex. B), requiring Pizzo to return said papers so that he, Fleischman, might comply with the summons. (M. 53–55) At a chance meeting thereafter at the Concourse Plaza Hotel in the Bronx, Fleischman orally requested Pizzo to return the papers. Pizzo said his lawyer was not ready to give them up. (M. 68–70) Pizzo denies that this oral request was made (M. 104–105), but I believe Fleischman. Pizzo has not complied with the requests. (M. 93)

9. Neither at the time Fleischman left the papers at Pizzo's office nor at any time afterwards did he say whether or not he would want them returned or that he still considered them to be his own. (M. 51, 70, 86, 87–88) When Fleischman was asked by respondent's counsel, who had called him as a witness, if he, Fleischman, at the time he left the papers at Pizzo's office intended that the papers be returned to Fleischman, Fleischman answered: "I had no thought at that time, none whatsoever." (M. 127)

10. When Pizzo obtained the papers he submitted them to his lawyer (M. 103, 104) but did nothing else with the papers. (M. 105) Pizzo stated he does not know what the papers contain and has never read them. (M. 111)

11. According to Fleischman, "work papers" means any papers "where you have records recorded on it and the common form of work papers are the columnar column paper." Memorandum sheets could be work papers and "it might be almost anything from the taxpayer's books showing income or expenditures." (M. 84, 85)

12. Fleischman performed no services for Pizzo other than preparing his personal returns for federal and state income taxes.

13. In preparing the returns for the years 1959 through 1963, the only books (or papers) Fleischman saw were the listing of disbursements prepared by Mrs. Rickert, Pizzo's secretary (M. 40–41), in addition to the bank statements, cancelled checks, and duplicate deposit slips (which contained the name of the person who paid Pizzo). (M. 80–81) The papers prepared by Mrs. Rickert were necessary for the preparation of the tax returns (M. 82), were used only for that purpose (M. 79), and after use were retained by Fleischman in a file folder in his office. (M. 80) In using the papers, Fleischman would pick them up from Pizzo's office after Mrs. Rickert prepared them. (M. 77) He checked them against the bank statements, making certain entries showing disburse-ment items which Mrs. Rickert had failed to enter. (M. 48, 80–81) From the sheets thus completed, and the deposit slips, he made up sheets calculating income and deductions. (M. 80–81)

14. At a hearing before the court, Pizzo's attorneys submitted to the court two sets of papers, to wit, Court's Exhibits 1 and 2 for identification. Fleischman identified Court's Exhibit 1 for identification as work sheets made up by him, in his handwriting, in computing Pizzo's income taxes for the years 1959 through 1963 (M. 41–44); Court's Exhibit 2 for identification he identified as originally prepared by Mrs. Rickert, Pizzo's secretary, during the same years, subsequently turned over to Fleischman for use by him in computing respondent's tax returns, and on which he made certain additional notations. (M. 46–49; see also Finding of Fact No. 13)

15. With the consent of counsel I examined generally the papers marked Court's Exhibits 1 and 2 for identification:

(a) Court's Exhibit No. 1 for identification contains four column sheets prepared in Fleischman's handwriting, five or six sheets for each year. In each annual set, one page contains a listing of all fees paid to Pizzo and deposited in his account, with the name of the payor, apparently taken from the deposit slips. The other pages contain analyses and calculations of various expenses under categories relative to income tax returns taken apparently from the list of disbursements prepared by Mrs. Rickert.

(b) The papers constituting Court's Exhibit No. 2 for identification are columnar sheets with twelve columns for figures, mostly prepared in a handwriting identified by Fleischman as "Mrs. Rickert's" (spelled "Rickerts" in the transcript of the hearing). The entries include supposedly all disbursements from Pizzo's checking account for each year. Each column is totalled at the end of each page, and the final page for the year contains the total in each column for that year, together with whatever disbursements Fleischman had to add.

16. I find that both Court's Exhibits 1 and 2 for identification are work papers and belong to the accountant, Leo H. Fleischman, and that he never relinquished his ownership thereof. He permitted Pizzo to have them so that Pizzo could show them to his attorney. Pizzo's possession was to be temporary and limited and as such it is insufficient to give him standing to object to production here.

## DISCUSSION

### I.

The procedure followed here by the United States is proper. Three different provisions of the Internal Revenue Code grant federal district courts the power to enforce Internal Revenue Service subpoenas: §§ 7402(b), 7604(a), and 7604(b). Sections 7402(b) and 7604(a), which are nearly identical, merely grant a general power of enforcement "by appropriate process." Section 7604(b), however, allows body attachment of a defaulting witness upon ex parte application. This is a drastic procedure, even though the person summoned must be given a full hearing after attachment on the merits of any objection he may have to the summons, and be ordered to comply, before he can be imprisoned for contempt. Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); Brody v. United States, 243 F.2d 378, 381 (1st Cir.), cert. denied, 354 U.S. 923, 77 S.Ct. 1384, 1 L.Ed.2d 1438 (1957); 8A Mertens, Law of Federal Income Taxation § 47.51, p. 154 (rev. ed. 1964). Thus, the Supreme Court has strictly limited use of the procedure. United States v. Powell, 379 U.S. 48, 51–52, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); Reisman v. Caplin, supra, 375 U.S. at 447–449, 84 S.Ct. 508. But the court's full statement in Powell was:

> "This enforcement proceeding was brought by the Government pursuant to § 7604(b) of the Code. In Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459, decided last Term subsequent to the rendering of the decision below, this Court stated that § 7604(b) 'was intended only to cover persons who were summoned and wholly made default or contumaciously refused to comply.' 375 U.S., at 448, 84 S.Ct. at 513. There was no contumacious refusal in this case. Thus the Government's conceded error in bringing its enforcement proceeding under § 7604(b) instead of § 7402 (b) or § 7604(a), each of which grants courts the general power to enforce the Commissioner's summonses 'by appropriate process,' raises a threshold question whether we must dismiss this case and force the Government to recommence enforcement proceedings under the appropriate sections. Since the Government did not apply for the prehearing sanctions of attachment and arrest peculiar to § 7604(b), and since these constitute the major substantive differences between the sections, we think it would be holding too strictly to the forms of pleading to require the suit to be recommenced, and therefore treat the enforcement proceeding as having been brought under §§ 7402(b) and 7604(a)." (379 U.S. at 51–52, 85 S.Ct. at 251–252)

Whether Pizzo was guilty of contumacy in failing to appear on the return date is perhaps open to reasonable difference of opinion. The day before he had called Special Agent Fensterman (whose signature was on the summons and who has apparent power to qualify or excuse compliance) and said that he could not appear, giving vague reasons. Fensterman knew that Pizzo was an unwilling witness and would take any pretext to avoid appearing, yet, instead of giving a direct answer, he equivocated. Fensterman did not have to beg Pizzo to appear but he could have removed all doubt from Pizzo's mind by saying: "Come tomorrow with the papers. I will take no excuses." Where obedience to a government command can be enforced by physical coercion, as under § 7604(b) of the Internal Revenue Code, or wilful disobedience can be punished as a crime, as under § 7210, that command should be clear and unequivocal.

However, this question of contumacy does not have to be decided here. Pizzo has not been arrested at any time in connection with the proceeding; the government now deems the summons satisfied by the delivery of the papers to the court (M. 140), and Pizzo has had a full hearing on his objections to production in spite of an original waiver. The conditions of Powell, supra, are thus met. McGarry's Inc. v. Rose, 344 F.2d 416, 418 (1st Cir. 1965). The proceedings need not be dismissed and reinstated and the court may issue whatever order is appropriate.

## II.

The papers contained in Court's Exhibits 1 and 2 for identification are work papers belonging to the accountant. These papers fit completely into the definition of "work papers" as stated by Fleischman. (Finding of Fact No. 15)

The work papers were and are owned by the accountant. He never divested himself of his interest therein. Pizzo, at most, temporarily submitted these papers to his attorney. No satisfactory proof of Fleischman's relinquishment of his interest in the papers was demonstrated. In United States v. Cohen, 250 F.Supp. 472 (D.Nev.1965) and Application of House, 144 F.Supp. 95 (N.D.Cal. 1956) there were at least ex post facto disclaimers of ownership by the accountants. In this case, Fleischman's request to Pizzo may have been motivated by a desire of the accountant, who probably has many business dealings with the Internal Revenue Service, to avoid possible trouble with it. But the failure of Fleischman even to suggest at any time that he had relinquished his claim, together with his testimony at the hearing, are persuasive evidence that he did not intend to relinquish his ownership. Nor was there a mutual course of dealing, as in United States v. Foster, Lewis, Langley & Onion, 65–1 U.S.T.C. ¶ 9418 (W.D. Tex.1964). See Deck v. United States, 339 F.2d 739 (D.C.Cir. 1964), cert. denied, 379 U.S. 967, 85 S.Ct. 660, 13 L.Ed. 2d 560 (1965); Boushor v. United States, 316 F.2d 451, 456 (8th Cir. 1963); In re Fahey, 300 F.2d 383 (6th Cir. 1961), affirming 192 F.Supp. 492 (W.D.Ky. 1961); Sale v. United States, 228 F.2d 682 (8th Cir.), cert. denied, 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868 (1956); United States v. Boccuto, 175 F.Supp. 886 (D.N.J.), appeal dismissed, 274 F.2d 860 (3rd Cir. 1959).

An intent on the part of Fleischman accompanying the transmission of the papers which is secret rather than expressed if not inadmissible, is still of little value. VII Wigmore on Evidence, § 1967, p. 107; City of Indianapolis v. Kingsbury, 101 Ind. 200, 213; Murphy v. Commonwealth, 187 Mass. 361, 73 N.E. 524; Hathaway v. Brown, 18 Minn. 414, 423.

In City of Indianapolis v. Kingsbury, supra, the court wrote:

"We fully agree with counsel for the appellees that an essential element of dedication is the intent of the owner to devote his land to a public purpose, and we unhesitatingly affirm that without such an intention it is impossible that there should be a valid dedication. President, etc., v. City of Indianapolis, 12 Ind. 620; Mansur v. State, 60 Ind. 357; Bidinger v. Bishop, 76 Ind. 244; 2 Dillon Munic. Corp. (3d ed.), section 636. But the intention to which courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts. It is the intention which finds expression in conduct, and not that which is secreted in the heart of the owner, that the law regards. Acts indicate the intention, and upon the intention clearly expressed by open acts and visible conduct the public and individual citizens may act. * * *" (101 Ind. p. 213)

Any contention that a distinction must be drawn between the papers in Exhibit 2 for identification and those in Exhibit 1 for identification is without substance. The fact that the basic papers on which Fleischman, the accountant, worked in Exhibit 2 for identification were supplied by an employee of Pizzo is insufficient to bar a conclusion

that the papers as utilized by, and as worked on by, Fleischman were his "work papers." Obviously, he had to have this information, as heretofore described, and to "work" on it; he could not perform his functions in a vacuum. Granting, arguendo, that these papers belonged to Pizzo at the time they were prepared by Mrs. Rickert, their nature and use, Pizzo's lack of further need for them, and his acquiescence in Fleischman's continued possession after the tax returns were completed, indicate an intent on Pizzo's part to give the papers to Fleischman and to abandon his interest in them.

### III.

 The work papers of the accountant are not protected by Pizzo's privilege under the Fifth Amendment. He could claim his privilege in them only if he owned them or rightfully held them in a personal capacity. United States v. White, 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); Deck v. United States, supra. Pizzo does not own them, and Fleischman has requested their return. Thus, Pizzo's possession is no longer rightful and he cannot claim his privilege in them.

There is no privilege for an accountant-client relationship or for "work product of an accountant" in New York and none in the federal courts. Falsone v. United States, 205 F.2d 734 (5th Cir.), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953); Sale v. United States, supra at 686. See also United States v. Willis, 145 F.Supp. 365, 367–68 (M.D.Ga.1955); Application of House, supra, 144 F.Supp. at 103.

Hence, there is no necessity for consideration of the question of privilege. Here there is none.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of this matter under Section 7604(b) and under Sections 7402(b) and 7604(a) of the Internal Revenue Code of 1954.

2. The papers in Court's Exhibits 1 and 2 for identification are work papers belonging to the accountant, Fleischman, who never relinquished his ownership thereof; the respondent never obtained a right to possession of the papers except to show them to counsel.

3. The said papers must be turned over to the United States Revenue Service, but this court will hold custody of the same for ten (10) days after entry of judgment herein and, provided respondent appeals, for a further ten (10) days to permit respondent in such case to apply in the Court of Appeals for an appropriate stay of the release of said papers to the United States pending determination of such appeal.

Let the United States prepare and settle judgment herein pursuant to the above.